## OATIS v. DAIRYLAND INSURANCE COMPANY

1. INSURANCE—UNINSURED MOTORIST COVERAGE—REJECTION—STATUTES.

   The policy of the legislature in setting out a specific procedure for the rejection of uninsured motorist coverage was to encourage purchase of this coverage by requiring that it is only rejected after the insured is fully aware of what he is doing (MCLA § 500.3010).

2. INSURANCE—UNINSURED MOTORIST COVERAGE—REJECTION—RENEWAL POLICY—STATUTES.

   Provision in statute that uninsured motorist coverage need not be provided in a supplemental or renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer *held* to apply only when the policy previously issued contained a notice and rejection form conforming to that required by statute (MCLA § 500.3010).

3. INSURANCE—UNINSURED MOTORIST COVERAGE—REJECTION—STATUTES.

   A written rejection of uninsured motorist coverage made in an application for a policy issued before the effective date of statute requiring written rejection of uninsured motorist cov-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 7 Am Jur 2d, Automobile Insurance § 135 *et seq.*
Rights and liabilities under "uninsured motorists" coverage. 79 ALR2d 1252.

erage on the face of the application for a policy does not have the legal effect of waiving such coverage for renewal policies issued after the statute went into effect where the rejection in the original application did not conform to the statutory requirements as to wording and type size (MCLA § 500.3010).

4. INSURANCE—UNINSURED MOTORIST COVERAGE—POLICY—STATUTES. An automobile insurance policy issued without an uninsured motorist provision and without a valid rejection of such coverage by the uninsured is deemed to include uninsured motorist coverage (MCLA §§ 500.3010, 500.3012).

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 November 5, 1969, at Detroit. (Docket No. 5,916.) Decided December 3, 1969. Rehearing denied January 15, 1970.

Complaint by Menervia Oatis against Dairyland Insurance Company, Hamway-Corbin Agency, Inc., and James M. Hare, Secretary of State, as custodian of the Motor Vehicle Accident Claims Fund for a declaratory judgment to determine whether Dairyland or the Fund is liable for damages sustained in an automobile accident with an uninsured motorist. Dairyland Insurance Company and the Secretary of State moved for summary judgment, which was granted for Dairyland Insurance Company. The Secretary of State appeals. Reversed and remanded for summary judgment for the Secretary of State.

*Ripple & Chambers* (*Donnelly W. Hadden,* of counsel), for plaintiff.

*Allen, Allen & Shell,* for defendant Dairyland Insurance Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke,*

Assistant Attorney General, and *Alan Walt,* Special Assistant Attorney General, for defendant James M. Hare.

Before:   LESINSKI, C. J., and HOLBROOK and QUINN, JJ.

LESINSKI, C. J.   Plaintiff Menervia Oatis filed this suit against her insurance company, defendant Dairyland Insurance Company, and the State Motor Vehicle Accident Fund, to recover for alleged damages suffered when she had an accident with an uninsured motorist.   The court below granted Dairyland's motion for summary judgment after concluding that plaintiff had no uninsured motorist coverage in effect on the date of the accident and that the requirements of MCLA § 500.3010 (Stat Ann 1969 Cum Supp § 24.13010)[1] had been met.   This appeal is brought by Secretary of State James M. Hare as

---

[1] This statute reads in full:

"Sec. 3010.   No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death set forth in section 504 of Act No 300 of the Public Acts of 1949, as amended, being section 257.504 of the Compiled Laws of 1948, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including owners or operators insured by an insolvent insurer, because of bodily injury, sickness or disease, including death, resulting therefrom, unless the named insured rejects such coverage in writing as provided herein.   All such policies shall contain a notice, displayed prominently on the front page of the policy, in at least 8-point type that such protection coverage was explained to him and that he can reject such coverage by notice in writing.   Unless the named insured requests such coverage in writing, it need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

custodian for the Motor Vehicle Accident Claims Fund (hereinafter, the Fund).

On December 1, 1965, plaintiff's husband applied for a policy of automobile insurance from defendant Dairyland. At that time Mr. Oatis signed a rejection of uninsured motorist coverage. The rejection was contained in an area of the application segregated from the body of the form by a heavy dark line which boxed in the words: "I hereby reject the inclusion of Uninsured Motorist (Family Protection) coverage from this policy and its subsequent renewals." The rejection required a separate signature by the applicant.

On January 1, 1966, MCLA § 500.3010 (Stat Ann 1969 Cum Supp § 24.13010) went into effect. The pertinent language of the statute states:

"No automobile liability or motor vehicle liability policy * * * shall be delivered or issued for delivery in this state * * * unless coverage is provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, * * * unless the named insured rejects such coverage in writing as provided herein. All such policies shall contain a notice, displayed prominently on the front page of the policy, in at least 8-point type that such protection coverage was explained to him and that he can reject such coverage by notice in writing. Unless the named insured requests such coverage in writing, it need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

On the anniversary date of plaintiff's policy, December 1, 1966, it was renewed, again without uninsured motorist coverage and again without the notice in 8-point type provided by the statute. During

the course of both this and the previous policy, no premium for such coverage was ever charged or paid.

After her accident with an uninsured motorist on July 6, 1967, plaintiff filed an application for payment with the Fund. The application was rejected. The Fund reasoned that there was no valid waiver or rejection of uninsured motorist coverage by Mr. Oatis within the terms of the statute, and that plaintiff was, therefore, deemed to have such coverage, thus making her ineligible to recover from the Fund.

Plaintiff then proceeded to notify Dairyland of her claim. Dairyland denied liability on the basis that such coverage had been specifically rejected in the application for the original insurance policy.

Plaintiff then commenced this action seeking a declaratory judgment to determine which of the defendants is liable. Both Dairyland and the Fund filed motions for summary judgment. Dairyland's motion was granted. This appeal was taken only by the Fund.

Simply stated, the question raised on appeal is whether the rejection of uninsured motorist coverage made in an application for a policy which was issued before the effective date of the statute had the legal effect of waiving such coverage for renewal policies issued after the statute went into effect. Resolution of the question centers on an interpretation of the statute and a determination of its relevance to insurance policies issued before its effective date.

The statute was clearly passed with the uninsured motorist fund in mind. Indeed, MCLA § 500.3010 (Stat Ann 1969 Cum Supp § 24.13010), which is PA 1965, No 388, was passed the same day as PA 1965, No 389, the latter containing several amendments to the Motor Vehicle Accident Claims Act.

Moreover, in *Woods* v. *Progressive Mutual Insurance Company* (1968), 15 Mich App 335, this Court accepted the fact agreed to by both parties therein that this statute and the Motor Vehicle Accident Claims Act are *in pari materia*.

With the statute the legislature has encouraged the purchase of uninsured motorist coverage by requiring specific notice and specific written rejection of the coverage. The required notices also serve to place to the burden of guaranteeing a knowledgable rejection on the insurance company.

The reasons behind the legislative encouragement are evident. The increased use of uninsured motorist coverage would tend to reduce the number of claims on the state fund. Furthermore, such insurance would give the insured extra protection over that provided by the Fund.[2]

The last sentence of the statute provides: "Unless the named insured requests such coverage in writing, it need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer." Dairyland's basic contention is that this provision controls. Moreover, it is argued that since uninsured motorist coverage was rejected "in connection with a policy previously issued * * * by the same insurer," the rejection was effective. We disagree.

It is hornbook law in Michigan that statutes must be read as a whole and that the duty of the courts is to implement legislative intent. As noted above, the policy of the legislature was to encourage the purchase of this coverage by requiring that it is only rejected after the insured is fully aware of what he is doing. To obtain this goal a specific procedure was set out in the statute, the following of which

---

[2] See MCLA § 257.1123(2) (Stat Ann 1968 Rev § 9.2823[2]).

would greatly increase the chances that only knowledgeable rejections are made.

Reading the last sentence of the statute with those that precede it forces us to conclude that when the legislature excepted renewals of a "policy previously issued" it referred only to policies previously issued in compliance with the statute. It was, therefore, incumbent upon Dairyland to issue the renewal policy of December, 1966, as if it were an original and in full conformance with the notice provisions of the statute.

There are, of course, a vast number of automobile policies in effect in this state. If our holding were otherwise, the large number of policies which are automatically renewed each year and which had their original policies issued before 1966 would never be affected by the statute.

The second issue raised in the instant case is whether the insurance contract herein involved can be held to provide uninsured motorist coverage. We conclude that not only is such a holding permissible,[3] it is required.

MCLA § 500.3012 (Stat Ann 1957 Rev § 24.13012), provides in pertinent part:

"Such a liability insurance policy issued in violation of sections 3004 through 3012 shall, nevertheless, be held valid *but be deemed to include the provisions required by such sections.*"   (Emphasis supplied.)

In *Woods* v. *Progressive Mutual Insurance Company, supra,* we cited this statute and stated at p 336:

---

[3] We note that our conclusion is permissible within the terms of the renewal insurance policy issued after the effective date of the statute. Paragraph 23 of the policy reads: "Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes."

"The insurance code requires that any automobile policy covering the insured's liability for personal injury also protect the insured from loss caused by 'uninsured motor vehicles.' If a policy is issued without such coverage, the statutorily required protection is read into the policy."

Reversed and remanded for entry of an order denying Dairyland's motion for summary judgment and granting the Secretary of State's motion for summary judgment. No costs, a public question being raised.

All concurred.