MARYLAND CASUALTY COMPANY, Plaintiff v. RALPH L. SMITH and wife, BARBARA SMITH, and JOEL SMITH, Defendants

No. 9422SC207

(Filed 17 January 1995)

**Insurance § 510 (NCI4th)— rejection of underinsured motorists coverage—statute amended and form revised— rejection invalid**

The insured's rejection of underinsured motorists coverage, prior to the amendment of N.C.G.S. § 20-279.21(b)(4) and prior to the approval of the new form reflecting the substance of the statutory amendment, was no longer valid and effective with respect to an accident which occurred after the rejection form had been substantially revised and after the policy had been renewed.

**Am Jur 2d, Automobile Insurance §§ 304 et seq.**

**Construction of statutory provisions governing rejection or waiver of uninsured motorist coverage. 55 ALR3d 216.**

Appeal by plaintiff from order entered 17 December 1993 by Judge Lester P. Martin, Jr. in Davie County Superior Court. Heard in the Court of Appeals 20 October 1994.

On 1 February 1993, plaintiff Maryland Casualty Company filed this action seeking a declaratory judgment that a policy of automobile insurance no. TFO—00207498 issued to defendants Ralph L. Smith and Barbara Smith in 1991 did not provide underinsured motorists coverage on 2 May 1992 because the coverage had been expressly rejected by Ralph L. Smith. Plaintiff's complaint alleged that on or about 2 May 1992 the insureds' son, Joel Smith, was injured in an automobile collision and that Joel Smith had taken the position that, as a resident of the Smith's household, he was entitled to underinsured motorists coverage in an amount in excess of $10,000.00 under the policy issued to defendants Ralph and Barbara Smith. On 18 February 1993, plaintiff amended its complaint to add an alternative claim for a declaratory judgment that defendant Joel Smith is not entitled to stack his own personal underinsured motorists coverage with any underinsured motorists coverage which might have been provided by the policy of his parents.

Both parties filed motions for summary judgment, which motions were heard by the Honorable Lester P. Martin, Jr., at the 29 November 1993 session of Davie County Superior Court. By order entered 17 December 1993, Judge Martin allowed defendants' motion for summary judgment and denied plaintiff's motion, holding that the parents' policy does provide underinsured motorists coverage for the defendant Joel Smith's 2 May 1992 accident and that Joel Smith may stack such underinsured motorists coverage with the underinsured motorist coverage provided under his own policy of liability insurance. Plaintiff appeals.

*Hendrick, Zotian, Bennett & Blancato, by Richard V. Bennett and Sherry R. Dawson, for plaintiff-appellant.*

*Snow & Skager, by Philip R. Skager, for defendants-appellees.*

THOMPSON, Judge.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990).

Subsection (b)(4) of N.C. Gen. Stat. § 20-279.21, as it read at the time plaintiff first issued its policy to defendants, provided for underinsured motorists coverage but also provided that an insured might reject such coverage:

(b) [An] owner's policy of liability insurance:

* * *

(4) Shall, in addition to the coverages set forth in subdvisions (2) and (3) of this subsection, provide underinsured motorist coverage, to be used only with policies that are written at limits that exceed those prescribed by subdivision (2) of this section, and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection in an amount equal to the policy limits for bodily injury liability as specified in the owners' policy.

* * *

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage.

If the named insured rejects the coverage required under this subdivision, the insurer shall not be required to offer the coverage in any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy unless the named insured makes a written request for the coverage. Rejection of this coverage for policies issued after October 1, 1986, shall be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.

N.C. Gen. Stat. § 20-279.21(b)(4) (1990). Plaintiff contends that it is entitled to summary judgment on its claim that the insurance policy did not provide underinsured motorists coverage on 2 May 1992 because, prior to that date, one of the named insureds, Ralph Smith, had executed a selection/rejection form in which he opted to reject underinsured motorists coverage. Neither Ralph nor Barbara Smith made a written request for underinsured motorists coverage until after 2 May 1992.

Selection/rejection form no. NC0185 which defendant Ralph Smith executed on 29 September 1991 was attached as Exhibit A to plaintiff's complaint. The form gave the insured the options of (1) rejecting uninsured/underinsured motorists coverage and selecting uninsured motorists coverage or (2) rejecting both uninsured and uninsured/underinsured motorists coverages. The following language preceded the list of options:

Uninsured Motorists Coverage and Uninsured/Underinsured Motorists Coverage have been explained to me. I understand that the option I select will apply to any renewal, reinstatement, substitute, *amended, altered, modified, transfer or replacement policies with this company unless I notify you otherwise in writing.

The Smiths renewed their policy in March 1992 but did not request that underinsured motorists coverage be added at that time. Therefore, on 2 May 1992, the day of Joel Smith's accident, the insurance policy did not expressly provide for underinsured motorists coverage.

Defendants argue that summary judgment was properly granted in their favor because Ralph Smith's rejection was ineffective. Therefore, they say, underinsured coverage should be deemed to have been provided, despite the fact that no premium was paid for that cover-

age. The basis for defendants' contention that Mr. Smith's rejection was ineffective is that it was executed on a selection/rejection form which became out-dated after it was executed, because of an amendment to the governing statute (N.C. Gen. Stat. § 20-279.21(b)(4)). Defendants point out that the form had been revised and reissued prior to the date on which Mr. Smith renewed his policy.

Section 2 of N.C. Session Laws 1991, chapter 646, amended Section 20-279.21(b)(4) in late 1991 to allow insureds to select uninsured or combined uninsured/underinsured motorists coverage of up to $1,000,000.00. 1991 N.C. Sess. Laws ch. 646, § 2. N.C. Gen. Stat. § 20-279.21(b)(4), as revised at that time, provided:

(b) [An] owner's policy of liability insurance:

＊ ＊ ＊

(4) Shall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide underinsured motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, in an amount not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000) as selected by the policy owner.

＊ ＊ ＊

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. Once the named insured exercises this option, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless the named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured is valid and binding on all insureds and vehicles under the policy.

If the named insured rejects the coverage required under this subdivision, the insurer shall not be required to offer the coverage in any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy unless the named

insured makes a written request for the coverage. Rejection of this coverage for policies issued after October 1, 1986, shall be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.

1991 N.C. Sess. Laws ch. 646, § 2; N.C. Gen. Stat. § 20-279.21(b)(4) (1991). To implement the changes to the statute, new selection/rejection forms NC0185 and NC0186 were promulgated and approved by the appropriate authorities. The 1991 amendment to N.C. Gen. Stat. § 20-279.21(b)(4) applied to "new and renewal policies written on and after the effective date of Sections 1 and 2 of this act." 1991 N.C. Sess. Laws ch. 646, § 4. Sections 1 and 2 of the act became effective on 5 November 1991.

At the same time that the optional policy limits for underinsured coverage were revised, Section 1 of chapter 646 forbade the stacking of uninsured coverage in any manner and Section 2 allowed stacking of underinsured coverage only between policies. 1991 N.C. Sess. Laws ch. 646, §§ 1 and 2. The effect of that change was to precipitate a substantial reduction in underinsured coverage premiums, which had recently soared on account of a court ruling that stacking was permissible within policies. See Sutton v. Aetna Casualty & Surety Co., 325 N.C. 259, 382 S.E.2d 759, rehearing denied, 325 N.C. 437, 384 S.E.2d 546 (1989). Attorney General Lacy H. Thornburg's Opinion Letter dated 12 November 1991, addressed to Commissioner of Insurance James E. Long.

This is a case of first impression in North Carolina. The question is whether the insured's rejection of underinsured motorists coverage, prior to the statutory amendment and prior to the approval of the new form reflecting the substance of the statutory amendment, was still valid and effective with respect to an accident that occurred after the rejection form had been substantially revised and after the policy had been renewed. We conclude that Mr. Smith's rejection executed on 29 September 1991 was no longer valid and effective after the 1991 amendment and after the new selection/rejection form was issued.

"The provisions of the Financial Responsibility Act are 'written' into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail." Nationwide Mutual Ins. Co. v. Chantos, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977), appeal after remand, 298 N.C. 246, 258 S.E.2d 334 (1979). Provisions of insurance policies and

compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage whenever possible by liberal construction. *State Capital Insurance Co. v. Nationwide Mutual Insurance Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986).

Underinsured coverage is mandatory unless rejected by the insured in accordance with the provisions of N.C. Gen. Stat. § 20-279.21. N.C. Gen. Stat. § 20-279.21 (b)(4) (1993). Thus plaintiff is considered to have extended underinsured coverage to defendants in accordance with the terms of the statutory amendment unless Smith's rejection prior to the date the statute was amended continues to be effective after the amendment. The November 1991 amendment to the statute, after authorizing the insured for the first time to select policy limits for underinsured coverage as little as those amounts set forth in N.C. Gen. Stat. § 20-279.5 or as great as $1,000,000.00, provides that

> [a]n insured named in the policy may select different coverage limits as provided in this subdivision. Once the named insured exercises *this option*, the insurer is not required to offer the option in any renewal . . . policy unless the named insured makes a written request to exercise a different option.

N.C. Gen. Stat. § 20.279.21 (b)(4) (1991) (emphasis supplied).

By providing that the insurer is <u>not</u> required to offer the option to select different policy limits once the named insured has exercised that option, the legislature in effect provided that the insured must be given the opportunity to exercise that option initially. Plaintiff sent the defendants in the form of an endorsement to the renewal policy issued in March 1992, a blank copy of the revised form (NC0186) that had been prepared by the N.C. Rate Bureau and approved by the Commissioner of Insurance. That form, as well as the earlier form (NC0374), were also referred to by number in the Declarations section of the renewal policy, although without notation of any premium for underinsured coverage. This may well have been the means by which the plaintiff undertook to "offer" the insured the selection of policy limits provided for in the statutory amendment. If so, it was half-hearted at best and hardly calculated to provoke the insured's attention. *Cf. Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 90 N.C. App. 746, 370 S.E.2d 258 (1988), *affirmed*, 324 N.C. 221, 376 S.E.2d 761 (1989) (by requiring policyholder to request underinsured coverage, insurer failed to comply with N.C. Gen. Stat. § 20-279.21(b)(4)). Indeed, attaching the new endorsement form and referring to it in the

Declarations section of the policy was more likely to mislead the insured than to inform him.

The plaintiff revised defendants' policy at least one other time after the statute had been amended and the new form promulgated. In order to make changes in vehicles insured and named insureds, defendants' original policy was amended effective 15 November 1991, affording plaintiff another opportunity to advise defendants of the then recent changes in the law. Plaintiff failed to do so. At that time or at the time of the renewal, the insureds should have been permitted to make a fresh choice as to whether they wished to purchase underinsured coverage or reject it. Among the factors which they might logically have considered in deciding whether or not to accept the coverage were (1) the reduction in premiums resulting from the prohibition against stacking of coverage within a single policy; (2) the availability of minimal coverage as set forth in N.C. Gen. Stat. § 20-279.5, presumably at an even lower premium than that required in the original policy for an amount of coverage "equal to the policy limits for automobile bodily injury liability as specified in the owner's policy;" and (3) the availability of greater coverage than that previously allowed before the amendment of the statute. The new statute left the insurer with no other course of action than to inform the insureds of the new ground rules, if the interests of its insureds were to be served.

Although we have been unable to identify any North Carolina cases remotely pertinent to the question presented here, there is a Michigan Court of Appeals case which is strikingly similar to this case and somewhat instructive. In *Oatis v. Dairyland Insurance Company*, 20 Mich. App. 367, 174 N.W.2d 35 (1969), the plaintiff's husband applied for a policy of insurance with defendant insurance company. On 1 December 1965, in accordance with the terms of the statute then in force, he signed a form rejecting uninsured motorists coverage. *Id.* at 370, 174 N.W.2d at 36. The rejection was contained in an area of the application separated from the body of the form by a heavy dark line boxing in the words "I hereby reject the inclusion of Uninsured Motorist (Family Protection) coverage from this policy and its subsequent renewals." *Id.* On 1 January 1966, the governing statute was amended to require that all such automobile policies contain a notice in at least 8-point type that "such protection coverage was explained to [the insured] and that [the insured could] reject such coverage by notice in writing." *Id.* The amendment further provided that, unless the named insured requested such coverage in writing, it need not be

provided in a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer. *Id.* at 370, 174 N.W.2d at 37. The policy was renewed on its anniversary date, 1 December 1966, without uninsured motorist coverage and without the required 8-point type notice provided for in the statutory amendment. *Id.* No premium was ever charged on either policy for uninsured motorist coverage. *Id.* at 371, 174 N.W.2d at 37. Plaintiff had an automobile accident with an uninsured motorist and brought a declaratory judgment action to determine if defendant Dairyland was liable. Dairyland's motion for summary judgment was granted. The Michigan Court of Appeals phrased the question presented in that case as follows: "whether the rejection of uninsured motorist coverage made in an application for a policy which was issued before the effective date of the statute had the legal effect of waiving such coverage for renewal policies issued after the statute went into effect." *Id.* at 371, 174 N.W.2d at 37. In reversing the lower court and holding that the insured was entitled to uninsured coverage, the Michigan court stated

> [I]t is argued that since uninsured motorist coverage was rejected in connection with a policy previously issued . . . by the same insurer, the rejection was effective. We disagree.
>
> It is hornbook law in Michigan that statutes must be read as a whole and that the duty of the courts is to implement legislative intent. As noted above, the policy of the legislature was to encourage the purchase of this coverage by requiring that it is only rejected after the insured is fully aware of what he is doing. To obtain this goal a specific procedure was set out in the statute, the following of which would greatly increase the chances that only knowledgable rejections are made.
>
> Reading the last sentence of the statute with those that precede it forces us to conclude that when the legislature excepted renewals of a 'policy previously issued' it referred only to policies previously issued in compliance with the statute. It was, therefore, incumbent upon Dairyland to issue the renewal policy of December, 1966, as if it were an original and in full conformance with the notice provisions of the statute.
>
> There are, of course, a vast number of automobile policies in effect in this state. If our holding were otherwise, the large number of policies which are automatically renewed each year and

which had their original policies issued before 1966 would never be affected by the statute.

*Id.* at 372-73, 174 N.W.2d at 37-38. As already pointed out, the original form NC0185 similarly stated that "Uninsured/Underinsured Motorists Coverage has been explained to me." After the statute was amended, this was no longer true.

We adopt the reasoning of the Michigan court in *Oatis* and hold that defendants are entitled to underinsured motorists coverage on their policy.

We find it unnecessary to consider the question of whether or not the policy of Joel Smith may be stacked with defendants' policy no. TFO—00207498, since plaintiff does not contest the superior court's ruling in its brief. *See* N.C.R. App. P. 28(b)(5) (1994).

The order of 29 November 1993 granting defendants' motion for summary judgment is

Affirmed.

Judges JOHNSON and MARTIN concur.

This opinion was written and concurred in prior to December 29, 1994.