NORTH CAROLINA FARM BUREAU, MUTUAL INSURANCE COMPANY, PLAINTIFF v. CARRIE B. BOST, AND ALLSTATE INSURANCE COMPANY, DEFENDANTS

No. COA96-586

(Filed 15 April 1997)

**1. Insurance § 531 (NCI4th); Torts § 12 (NCI4th)— settlement with tortfeasor—covenant not to enforce judgment— UIM recovery not barred**

A "Settlement Agreement and Limited Release" entered by the insured with the tortfeasor and his liability carrier was a covenant not to enforce judgment rather than a general release and did not bar the insured from recovering UIM benefits where the agreement released only the tortfeasor from personal liability, reserved the insured's rights against the UIM carriers, retained the insured's right to prosecute a lawsuit against the tortfeasor to the extent necessary to recover UIM benefits, and prohibited the insured from enforcing any judgment against the tortfeasor.

**Am Jur 2d, Automobile Insurance § 322.**

**2. Insurance § 531 (NCI4th)— acceptance of check from tortfeasor—right to UIM benefits not extinguished**

The insured's acceptance and endorsement of a check from the tortfeasor's liability insurer did not extinguish her right to seek UIM benefits on the ground that UIM liability is derivative of the tortfeasor's liability where the insured properly notified the UIM carriers of her limited settlement agreement with the tortfeasor, exhausted available liability coverage with the settlement, notified the UIM carriers of her plan to seek UIM coverage pursuant to N.C.G.S. § 20-279.21(b)(4), and reserved her right to seek

UIM coverage by making a covenant not to enforce any judgment against the tortfeasor.

**Am Jur 2d, Automobile Insurance § 322.**

**3. Insurance § 535.1 (NCI4th)— underinsured highway vehicle—interpolicy stacking of UIM limits**

Interpolicy stacking of the UIM limits of two policies was properly permitted for the purpose of determining whether the tortfeasor's vehicle was an "underinsured highway vehicle" as defined in N.C.G.S. § 20-279.21(b)(4).

**Am Jur 2d, Automobile Insurance § 329.**

**4. Insurance § 529 (NCI4th)— first class insured in two policies—other insurance provisions nullified—UIM coverages both primary—pro rata sharing of settlement**

A mother injured while a passenger in her son's vehicle was a first class insured in automobile policies issued to the son and to a daughter where she was a resident in the households of both the son and the daughter at the time of the accident; therefore, identical "other insurance" provisions in both policies making insurance with respect to a vehicle "you do not own" excess over any other collectible insurance nullified each other so that the UIM coverages in both policies were "primary," and both insurers must share in the mother's settlement with the tortfeasor on a pro rata basis for UIM purposes.

**Am Jur 2d, Automobile Insurance §§ 326 et seq.**

Appeal by plaintiff from order entered 4 March 1996 by Judge William H. Helms in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 February 1997.

*Caudle & Spears, P.A., by Nancy E. Walker and Lloyd C. Caudle, for plaintiff-appellant.*

*Staten L. Wilcox for defendant-appellee Carrie B. Bost.*

*Arthurs & Foltz, by Douglas P. Arthurs, for defendant-appellee Allstate Insurance Company.*

MARTIN, John C., Judge.

Plaintiff North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) filed this declaratory judgment action to determine its obligations to defendant Carrie B. Bost under an underinsured

motorist (UIM) policy issued to her son, Larry Bost. The record establishes that on 24 June 1994, Carrie Bost was injured when the vehicle in which she was a passenger, owned and operated by Larry Bost, was struck by a vehicle operated negligently by William Earl Ezzelle. Allstate Insurance Company (Allstate) insured the Ezzelle vehicle with liability policy limits of $100,000. For the purposes of this action, the parties have stipulated that Carrie Bost sustained damages equal to or exceeding $200,000 as a result of the collision.

At the time of the accident, Carrie Bost was a family member and resident in the households of both her son, Larry Bost and her daughter, Cara Bost. Farm Bureau insured Larry Bost's vehicle and defendant Allstate insured Cara Bost's vehicle. Both policies provided for UIM coverage in the amount of $100,000 per person with a limit of $300,000 for each accident.

On 6 February 1995, Carrie Bost notified both UIM carriers of Allstate's tender of its policy limits under Ezzelle's Allstate liability policy in exchange for a limited release and settlement agreement. On 10 March 1995, she executed and delivered a "Settlement Agreement and Limited Release" in exchange for the policy limits of $100,000 under Ezzelle's Allstate policy. The agreement released Ezzelle from personal liability while reserving Carrie Bost's right to seek further restitution under the UIM provisions of Larry Bost's Farm Bureau policy and Cara Bost's Allstate policy.

Both Farm Bureau and Carrie Bost moved for summary judgment. The trial court granted Carrie Bost's motion for summary judgment and denied Farm Bureau's motion, concluding that Bost's execution of "The Settlement Agreement and Limited Release" as well as her acceptance of the $100,000 draft did not constitute a bar of any claim by Carrie Bost against Farm Bureau and Allstate for UIM coverage. The trial court entered a judgment declaring:

> 2. That when the $100,000.00 underinsured motorist coverage of the Plaintiff, North Carolina Farm Bureau Mutual Insurance Company, is combined with the $100,000.00 underinsured motorist coverage of the Defendant, Allstate Insurance Company, there is a total underinsurance coverage of $200,000.00 and therefore the vehicle owned and negligently operated by William Earl Ezzelle was an underinsured vehicle as to the Plaintiff, North Carolina Farm Bureau Mutual Insurance Company's policy and the Defendant, Allstate Insurance Company's policy.

. . .

N.C. FARM BUREAU MUT. INS. CO. v. BOST

[126 N.C. App. 42 (1997)]

4. That the amount of underinsured motorist coverage provided under the policy of the Plaintiff, North Carolina Farm Bureau Mutual Insurance Company, and the Defendant, Allstate Insurance Company, totals $200,000.00 and that each is entitled to a setoff or a credit for a pro rata share of the $100,000.00 paid by Allstate Insurance Company under the policy of William Earl Ezzelle.

Therefore, after their respective credits in the amount of $50,000.00, the Plaintiff, North Carolina Farm Bureau Mutual Insurance Company and the Defendant, Allstate Insurance Company, each has an additional $50,000.00 in coverage (for a total amount of $100,000.00) available to satisfy, on a pro rata basis, the personal injury claim of the Defendant, Carrie B. Bost.

Farm Bureau appeals from the trial court's order.

The issues on appeal are (1) whether Carrie Bost's execution of the "Settlement Agreement and Limited Release" and acceptance of the $100,000 draft releases Farm Bureau from providing UIM coverage to her; (2) whether Ezzelle's vehicle is an "underinsured" vehicle pursuant to G.S. § 20-279.21(b)(4), and if so, (3) whether Farm Bureau's UIM coverage is "primary" as to defendant Allstate's coverage.

By its first and second assignments of error, Farm Bureau contends that Carrie Bost is precluded from recovering under the UIM coverage provided by its policy because its liability under the UIM coverage derives from the tortfeasor's liability, which was extinguished by Carrie Bost's settlement with the tortfeasor's liability insurance carrier.

[1] Farm Bureau argues that Carrie Bost is precluded from recovering under the UIM coverage provided by its policy because she entered into a "Settlement Agreement and Limited Release," with the tortfeasor's liability carrier.

The "Settlement Agreement and Limited Release" provides in pertinent part:

2. . . . The undersigned hereby fully releases and discharges William Earl Ezzelle from any personal liability whatsoever as a result of said incident and covenants to hold harmless William Earl Ezzelle and to enforce any judgment or order, in connection with any civil action hereafter filed, or judgment or order in

any other action duly entered, only against Allstate Insurance Company as underinsured motorist carrier for Cara Diane Bost and North Carolina Farm Bureau Insurance Company as underinsured motorist carrier for Larry L. Bost, or any other applicable underinsured motorist coverage which may apply to the injuries and damages incurred by Carrie B. Bost, and not to enforce any such judgment or order against William Earl Ezzelle personally.

3. Nothing herein shall be construed to release, acquit, or discharge Allstate Insurance Company, North Carolina Farm Bureau Insurance Company, or any other party or insurance carrier not referred to in this agreement from any obligation on account of, or in any way growing out of the aforesaid underinsured motorist coverage or any other coverage which may be applicable to the claims arising from the June 24, 1994, automobile collision. . . . The undersigned specifically preserves her underinsured motorist claims against Allstate Insurance Company and North Carolina Farm Bureau Insurance Company and retains her right to file and prosecute a lawsuit against William Earl Ezzelle to the extent necessary to recover said underinsured motorist coverages. . . .

Farm Bureau relies on *Spivey v. Lowery,* 116 N.C. App. 124, 446 S.E.2d 835, *disc. review denied,* 338 N.C. 312, 452 S.E.2d 312 (1994), for the proposition that an injured party who executes a general release cannot thereafter assert any claims arising out of the accident and that a UIM carrier's consent to the settlement does not alter the legal effect of the general release. In so ruling, our Court relied on the general rule that a UIM carrier's liability is derivative of the tortfeasor's liability. *Buchanan v. Buchanan,* 83 N.C. App. 428, 350 S.E.2d 175 (1986), *disc. review denied,* 319 N.C. 224, 353 S.E.2d 406 (1987). In *Spivey,* the plaintiff executed a general release in which she released the tortfeasor, the liability insurer, and "all other persons, firms, [and] corporations . . ." against whom she had any claim as a result of the accident. *Id.* at 125, 446 S.E.2d at 836.

The "Settlement Agreement and Limited Release" in the present case, however, as distinguished from that in *Spivey,* specifically reserves Carrie Bost's rights against Farm Bureau and Allstate, releasing only Ezzelle from any personal liability. Moreover, Carrie Bost retained her "right to file and prosecute a lawsuit against William Earl Ezzelle to the extent necessary to recover said underinsured motorist coverages," and agreed "not to enforce any such judgment against"

**N.C. FARM BUREAU MUT. INS. CO. v. BOST**

[126 N.C. App. 42 (1997)]

him. Therefore, Carrie Bost's "Settlement Agreement and Limited Release" is a covenant not to enforce judgment and not a general release as contemplated by *Spivey*. Accordingly, Carrie Bost's entry into a settlement agreement with Ezzelle and his carrier does not bar her as a matter of law from recovering under Farm Bureau's UIM coverage.

[2] Farm Bureau also argues that Bost's acceptance and endorsement of the check from Allstate on behalf of Ezzelle constituted an accord and satisfaction with the tortfeasor and a final settlement of all claims, including Bost's UIM claim, because UIM coverage liability is derivative of the tortfeasor's liability.

> An "accord" is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considered himself entitled to; and a "satisfaction" is the execution or performance, of such agreement.

*Sharpe v. Nationwide Mut. Fire Ins. Co.* 62 N.C. App. 564, 565, 302 S.E.2d 893, 894, *cert. denied*, 309 N.C. 823, 310 S.E.2d 353 (1983). Farm Bureau is correct in its contention that a check tendered as payment in full of a disputed claim establishes an accord and satisfaction. *See Canaday v. Mann*, 107 N.C. App. 252, 419 S.E.2d 597 (1992). However, the accord and satisfaction reached between Carrie Bost and Ezzelle's liability carrier did not extinguish her claim for UIM coverage.

Our Supreme Court considered and rejected an argument similar to that made by Farm Bureau in this case. *Silver v. Horace Mann Ins. Co.*, 324 N.C. 289, 378 S.E.2d 21 (1989). The Court concluded that although the phrase "legally entitled to recover" in G.S. § 20-279.21 (1983) and in provisions of an automobile insurance policy regarding UIM coverage means that the insurance carrier's UIM liability is derivative, plaintiff insured's entry of a consent judgment releasing the tortfeasors and their insurance carrier did not bar her as a matter of law from recovering under the UIM coverage of her policy. The Court reasoned that internally conflicting provisions in the statute and in the policy appeared to require the insured both to preserve the cause of action against the tortfeasor and to settle the cause before seeking UIM benefits. The Court resolved the conflict in favor of the insured. We find the analysis in *Horace Mann*, which interpreted

the 1983 statute to be applicable as well to the current version, G.S. § 20-279.21(b)(4) (1993), which provides:

> . . . Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted. . . .

Farm Bureau's policy provides in pertinent part:

### PART C—UNINSURED MOTORISTS COVERAGE

We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of :

> (1)  Bodily injury sustained by an insured and caused by an accident; and

> (2)  Property damage caused by an accident.

. . .

### PART D—COMBINED UNINSURED/UNDERINSURED MOTORISTS COVERAGE

We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have ben [sic] exhausted by payments of judgments or settlements, . . . .

In the present case, Carrie Bost properly notified both UIM carriers of her "Settlement Agreement and Limited Release" and her plans to seek UIM coverage pursuant to G.S. § 20-279.21(b)(4). Farm Bureau failed to take steps to preserve its right to approve the settlement as provided by G.S. § 20-279.21(b)(4). Carrie Bost then accepted Ezzelle's liability carrier's tender and executed the "Settlement Agreement and Limited Release." Not only did Carrie Bost exhaust her liability policies pursuant to G.S. § 20-279.21(b)(4) and the UIM provisions of Farm Bureau's policy by accepting the tender, she also reserved her right to seek UIM coverage by making a covenant not to enforce any judgment by executing the "Settlement Agreement and Limited Release." Because Carrie Bost exhausted the limits of liability by settling with Allstate, Farm Bureau, therefore, has no right to object to the settlement of the primary claim and cannot complain when the insured takes steps necessary to seek UIM coverage. *See*

*Guranious v. Integon General Ins. Corp.* 108 N.C. App. 163, 423 S.E.2d 317 (1992).

**[3]** Farm Bureau next contends that the Ezzelle vehicle was not an "underinsured highway vehicle" under G.S. § 20-279.21(b)(4) because the UIM limits of Larry Bost's vehicle was equal to the liability limits of Ezzelle's vehicle. Farm Bureau argues that the 1991 act amending G.S. § 20-279.21(b)(4) does not allow interpolicy stacking of UIM limits applicable to a claimant for the purpose of determining whether the tortfeasor's vehicle is an "underinsured highway vehicle." We disagree.

The pre-1991 G.S. § 20-279.21 defined "underinsured highway vehicle" as follows:

> a highway vehicle with respect to the ownership, maintenance, or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the owner's policy.

> in any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance; it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies . . . .

Our Courts interpreted this language to allow both intrapolicy stacking of UIM coverage, *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124 (1992), and interpolicy stacking of UIM coverage, *Onley v. Nationwide Mut. Ins. Co.*, *et. al.*, 118 N.C. App. 686, 456 S.E.2d 882, *disc. review denied*, 341 N.C. 651, 462 S.E.2d 514 (1995), in determining whether a tortfeasor's vehicle is an "underinsured highway vehicle."

G.S. § 20-279.21(b)(4), as amended 5 November 1991, defines an "underinsured highway vehicle" as follows:

> [A] highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury and liability bonds and insurance policies applicable at the

time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

. . .

In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident. Furthermore, if a claimant is an insured under the underinsured motorist coverage on separate or additional policies, the limit of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and the total limits of the claimant's underinsured motorist coverages as determined by combining the highest limit available under each policy; . . . The underinsured motorist limits applicable to any one motor vehicle under a policy shall not be combined with or added to the limits applicable to any other motor vehicle under that policy.

Our Courts have noted that the 1991 act amending G.S. § 20-279.21(b)(4), prohibits intrapolicy stacking. *See Bass v. N.C. Farm Bureau Mut. Ins. Co.*, 332 N.C. 109, 113 n.2, 418 S.E.2d 221, 223 n.2 (1992) ("1991 amendment to N.C.G.S. § 20-279.21(b)(4) appears to prohibit intrapolicy stacking"); *Honeycutt v. Walker*, 119 N.C. App. 220, 224, 458 S.E.2d 23, 26, *disc. review denied*, 342 N.C. 192, 463 S.E.2d 236 (1995) ("the main purpose of the 1991 amendments to G.S. 20-279.21(b)(4) appears to be the prohibition of intrapolicy stacking of UIM coverage"); *Maryland Casualty Co. v. Smith*, 117 N.C. App. 593, 452 S.E.2d 318, *disc. review denied*, 340 N.C. 114, 456 S.E.2d 316 (1995) (determining that the 1991 amendments allowed stacking of UIM coverage between policies but not within policies). Farm Bureau concedes that the 1991 amendment allows interpolicy stacking, however Farm Bureau argues that it does not allow interpolicy stacking for the purpose of determining whether Ezzelle's vehicle is underinsured. We disagree.

Provisions of the Financial Responsibility Act are written into every automobile liability policy as a matter of law. *Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 298 S.E.2d 56 (1982), *cert. denied*, 307 N.C. 698, 301 S.E.2d 101 (1983). "The primary purpose of

the compulsory motor vehicle liability insurance required by North Carolina's Financial Responsibility Act is to compensate innocent victims who have been injured by financially irresponsible motorists." *South Carolina Ins. Co. v. Smith*, 67 N.C. App. 632, 636, 313 S.E.2d 856, 860, *disc. review denied*, 311 N.C. 306, 317 S.E.2d 682 (1984). The Act is to be liberally construed so that its intended purpose may be accomplished. *Id.*

The 1991 amendment expressly states that a claimant is not entitled to stack UIM coverage within policies, overturning *Harris*, but states that a claimant is entitled to stack between policies, upholding *Onley*. While it may be argued that the language "vehicle involved in the accident" confines Carrie Bost's UIM coverage only to Larry Bost's vehicle, when it is read in context with the surrounding stacking subsection, the "limits" referred to in the 1991 amendment are all of the UIM limits available to Carrie Bost. We hold that the 1991 amendment to the Act did not affect the validity of interpolicy stacking in *Onley*, and therefore, defendant Carrie Bost is allowed to stack the UIM coverages of Farm Bureau and Allstate for purposes of determining whether Ezzelle's vehicle was an underinsured motor vehicle as defined under G.S. § 20-279.21(b)(4). Accordingly, the trial court properly allowed Carrie Bost to stack the UIM coverages of Farm Bureau and defendant Allstate to determine that the Ezzelle vehicle was an "underinsured motor vehicle."

[4] Finally, Farm Bureau contends that the trial court erred in its ruling that both Farm Bureau and defendant Allstate provide excess UIM coverage. Farm Bureau argues that its UIM coverage is "primary" because it provides the insurance for the car owned by Larry Bost.

The Farm Bureau and defendant Allstate policies contain the following identical "Other Insurance" provision:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability for your injuries under all the policies shall not exceed the highest applicable limit of liability under any one policy.

> In addition, if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, <u>any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.</u> (emphasis added).

Generally, the first class of "persons insured" are the "named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise." N.C. Gen. Stat. § 20-279.21(b)(3). All persons in the first class are treated the same for insurance purposes. *See N.C. Farm Bureau Mut. Ins. Co. v. Hilliard*, 90 N.C. App. 507, 369 S.E.2d 386 (1988). When "excess" clauses in several policies are identical, the clauses are deemed mutually repugnant and neither excess clause will be given effect, leaving the insured's claim to be pro rated between the separate policies according to their respective limits. *Id.*

Carrie Bost was not a named insured under Larry Bost's insurance policy with Farm Bureau. Both Farm Bureau and defendant Allstate insured Carrie Bost as a first class insured because she was a relative and resident of the households of both Larry and Cara Bost. Both policies have "Other Insurance" provisions which are identical, and therefore, the provisions nullify each other, leaving Farm Bureau and defendant Allstate to share the Ezzelle settlement on a pro rata basis.

Affirmed.

Chief Judge ARNOLD and Judge SMITH concur.