NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, PLAINTIFF-
APPELLANT v. PHILLIP M. EDWARDS AND MARY B. EDWARDS, DEFENDANTS-
APPELLEES

No. COA01-1207

(Filed 17 December 2002)

### 1. Insurance— underinsured motorist—release—summary judgment

The trial court did not err in an action arising out of an automobile accident by granting summary judgment in favor of defendant insureds on their claim for underinsured motorist (UIM) coverage even though defendants executed a limited release that neither contained a covenant not to enforce nor an express provision reserving their rights as against plaintiff insurance company, because: (1) the release embodied defendants' attention to and awareness of their right to seek UIM benefits from their insurer and their intent to exclude the liability of the UIM carrier from the release; and (2) there is no inconsistency between the alleged intent of the injured party and the language of the policy when the handwritten alterations contained in the release show defendants' intent to limit release of liability to that of the tortfeasor.

### 2. Arbitration and Mediation— motion to stay arbitration— underinsured motorist coverage

The trial court did not err in an action arising out of an automobile accident by denying plaintiff insurance company's motion to stay arbitration because defendants' claim for underinsured motorist (UIM) benefits was not barred by their execution of a limited release.

Appeal by plaintiff from judgment and order entered 18 June 2001 by Judge Raymond A. Warren in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 June 2002.

## N.C. FARM BUREAU MUT. INS. CO. v. EDWARDS

[154 N.C. App. 616 (2002)]

*Caudle & Spears, PA, by Christopher J. Loebsack, for plaintiff-appellant.*

*Battle, Winslow, Scott & Wiley, PA, by Marshall A. Gallop, Jr.; and Soles, Phipps, Ray, Prince & Williford, by R.C. Soles, Jr., for defendants-appellees.*

BRYANT, Judge.

This appeal arises out of an automobile accident that occurred on 15 April 1991 in Maryland between defendant Phillip Edwards and Mary Louise Haggenmaker. At the time of the accident, defendant Phillip Edwards was insured under a personal auto policy issued by plaintiff North Carolina Farm Bureau Mutual Insurance Company [Farm Bureau or plaintiff]. The policy contained under-insured motorist [UIM] coverage in the amount of $100,000 per person for bodily injury and covered Phillip Edwards' four personal vehicles, including the 1974 Volvo he was driving at the time of the accident.

Phillip Edwards and his wife, Mary Edwards [defendants], filed suit against Haggenmaker for personal injuries and damages arising out of the accident. In May 1997, the Haggenmakers' liability insurance carrier, State Farm, offered defendants the policy limit of $100,000 to settle their claims against Haggenmaker. By letter dated 15 May 1997, Farm Bureau elected not to advance defendants the $100,000 policy limit[1] and asked defendants to notify Farm Bureau if they intended to pursue additional claims.

On 16 August 1997, defendants accepted the $100,000 tender from the Haggenmakers and State Farm, and executed a "Release" [the Edwards Release or the Release] in consideration of the $100,000 payment. The Release stated, in pertinent part, with handwritten portions underlined and those portions marked-through stricken:

For the Sole Consideration of *One hundred thousand dollars* ($100,000) Dollars, [sic] the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges

*Harry H. Haggenmaker Mary Haggenmaker*

1. The insurer may elect to advance to its insured the liability limits of the tortfeasor's policy and thereby preserve its subrogation rights against the tortfeasor. N.C.G.S. § 20-279.21(b)(4) (2001).

their heirs, executors, administrators, agents and assigns, ~~and all other persons, firms or corporations liable or who might be claimed to be liable, none of~~ whom <u>do not</u> admit any liability, ~~from~~ any and all claims, demands, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about *April 15, 1991* at or near *Old Crain Highway near School Lane.*

. . . .

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever and further or additional claims arising out of the aforesaid accident <u>against the above named individuals</u>.

After settling with Haggenmaker, defendant Phillip Edwards asserted a claim against Farm Bureau for benefits under his UIM coverage and demanded arbitration pursuant to the policy. From August 1997 to March 2000, the parties exchanged a series of correspondence regarding the legal implications of the Release, arbitration, and discovery prior to arbitration.

Ultimately, Farm Bureau denied Edwards' claim for UIM benefits under the policy based upon defendants' execution of the Release in favor of Haggenmaker and its interpretation of a recent amendment to the North Carolina Motor Vehicle Safety and Financial Responsibility Act [MVSFRA]. *See* N.C.G.S. § 20-279.21(b)(4).

Farm Bureau filed a declaratory judgment complaint on 22 March 2000 requesting that the trial court determine the rights of the parties under the Edwards' UIM policy and the Release and that the court stay arbitration pending that determination. Farm Bureau and defendants filed cross-motions for summary judgment. On 18 June 2001, the trial court entered an order and judgment granting defendants' motion for summary judgment and ordering the parties to submit to arbitration. Farm Bureau has appealed.[2]

---

2. On 18 July 2001, Farm Bureau filed a written notice of appeal. On 20 August 2001, Farm Bureau filed a petition for writ of supersedeas and a motion for temporary

Farm Bureau argues that the trial court erred in: 1) granting defendants' motion for summary judgment because the Release barred defendants' claim for UIM benefits; and 2) denying Farm Bureau's motion to stay arbitration because defendants' claim for UIM benefits was barred. We disagree as to both issues and therefore affirm the Order of the trial court.

## I.

[1] Plaintiff first argues that the trial court erred in granting defendants' motion for summary judgment because defendants' claim was barred by the execution of the Release. Upon motion, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001). An issue is material if "the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). An issue is genuine if it is supported by substantial evidence. *Id.* Our task is to determine, after reviewing the entire record: 1) whether a genuine issue of material fact exists; and 2) whether defendants were entitled to judgment as a matter of law concerning the effect of the Release on defendants' right to claim UIM benefits.

This Court has previously addressed similar issues in *Spivey v. Lowery*, 116 N.C. App. 124, 446 S.E.2d 835 (1994), and *N.C. Farm Bureau, Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 483 S.E.2d 452 (1997). Generally, a UIM carrier's liability to the insured is derivative of the tortfeasor's liability. *Buchanan v. Buchanan*, 83 N.C. App. 428, 429, 350 S.E.2d 175, 176 (1986). Based upon this well-established principle and, more importantly, the plaintiff/injured party's execution of a "general release", the *Spivey* Court held that the plaintiff was not entitled to bring a claim for UIM benefits. *Spivey*, 116 N.C. App. at 127-28, 446 S.E.2d at 838. Upon sustaining injury following a car accident, the *Spivey* plaintiff settled with the tortfeasor's insurer, executing a boilerplate, "general release", "releas[ing], acquiti[ting], and forever discharg[ing]" defendant tortfeasor, tortfeasor's insurer,

---

stay of any arbitration proceedings. The temporary stay was granted by this Court on 20 August 2001, but the trial court entered an order denying the writ of supersedeas and dissolving the temporary stay on 30 August 2001.

and "all other persons, firms, corporations, associations or partnerships of and from any and all claims of action, demands, rights, [and] damages . . . whatsoever, which the undersigned now has . . . or which may hereafter accrue . . . [as a result of] the accident." *Id.* at 125, 446 S.E.2d at 836 (alterations in original). When the plaintiff then attempted to recover from her insurer, Hartford, under her UIM policy, Hartford raised the general release as a bar to the plaintiff's recovery.

According to the *Spivey* Court, "because plaintiff signed a *general release,* plaintiff may not assert any claims arising out of the accident." *Id.* at 126, 446 S.E.2d at 837 (emphasis added). Additionally, addressing plaintiff's assertion that she did not intend to release the UIM carrier from liability, the *Spivey* Court stated that "whether or not plaintiff intended to release the UIM carrier is irrelevant. As long as plaintiff intended to release the tortfeasor, the UIM carrier is released as well." *Id.* at 127. 446 S.E.2d at 838 (citing *Buchanan,* 83 N.C. App. at 430, 350 S.E.2d at 177).

This Court distinguished *Spivey* and clarified the law regarding a release's effect on an injured party's right to bring UIM claims in *Bost,* 126 N.C. App. 42, 483 S.E.2d 452. Pursuant to a settlement, the *Bost* plaintiff, who was injured when struck by the tortfeasor's vehicle, executed a "Settlement Agreement and Limited Release" in favor of the tortfeasor in exchange for the $100,000 policy limit under the tortfeasor's liability policy. The *Bost* release stated the following, in pertinent part:

2. . . . [injured party, Carrie B. Bost] releases and discharges [tortfeasor, Ezzelle] from any personal liability whatsoever as a result of said incident and covenants to hold harmless [Ezzelle] and to enforce any judgment or order, in connection with any civil action hereafter filed, or judgment or order in any other action duly entered, only against . . . underinsured motorist carrier[s] for [the Bost family] . . . which may apply to the injuries and damages incurred by [Carrie Bost], and not to enforce any such judgment or order against [Ezzelle] personally.

3. Nothing herein shall be construed to release, acquit, or discharge [named UIM insurance carriers] or insurance carrier not referred to in this agreement from any obligation on account of, or in any way growing out of the aforesaid underinsured motorist coverage or any other coverage which may be applicable to the claims arising from the June 24, 1994, automobile collision. . . .

The undersigned specifically preserves her underinsured motorist claims against [her UIM carriers] and retains her right to file and prosecute a lawsuit against [Ezzelle] to the extent necessary to recover said underinsured motorist coverages. . . .

*Id.* at 45-46, 483 S.E.2d at 455.

Based upon the above-cited release, this Court concluded that unlike the general release signed by the *Spivey* plaintiff, Bost executed a covenant not to enforce judgment against the tortfeasor, releasing only the tortfeasor from any personal liability. Furthermore, Bost retained her rights against the tortfeasor to the extent necessary to recover under the UIM coverage.

> The "Settlement Agreement and Limited Release" in the present case, however, as distinguished from that in *Spivey*, *specifically reserves* Carrie Bost's rights against Farm Bureau and Allstate, releasing only [the tortfeasor] from any personal liability. Moreover, Carrie Bost retained her "right to file and prosecute a lawsuit against [the tortfeasor] to the extent necessary to recover said underinsured motorist coverages," and agreed "not to enforce any such judgment against" him. Therefore, Carrie Bost's "Settlement Agreement and Limited Release" is a covenant not to enforce judgment and not a general release as contemplated by *Spivey*. Accordingly, Carrie Bost's entry into a settlement agreement with [the tortfeasor] and his carrier does not bar her as a matter of law from recovering under Farm Bureau's UIM coverage.

*Id.* at 46-47, 483 S.E.2d at 455-56 (emphasis added).

On 14 August 1997, shortly after our decision in *Bost*, the North Carolina General Assembly amended a portion of the MVSFRA, clarifying the effect of a covenant not to enforce judgment on an insured party's right to seek UIM benefits. 1997 N.C. Sess. Laws ch. 396, § 2. Prior to the 1997 amendment, the MVSFRA provided that with notification to and subsequent action by the UIM carrier, an injured party could settle personal injury claims against tortfeasors, without the involvement of the UIM carrier. *See* N.C.G.S. § 20-279.21(b)(4) (1996) (amended 1997). In the absence of express language addressing how such a settlement should affect an injured party's right to subsequently seek UIM benefits, confusion arose concerning the effects of covenants not to enforce judgments on UIM coverage. *See* George L. Simpson, III, *North Carolina Uninsured and Underinsured Motorist Insurance* §4:3, at 262-63 (2002).

Responding to the confusion, our legislature enacted the above referenced 1997 amendment to section 20-279.21(b)(4), effective 14 August 1997. *See id.* Codifying our Court's holding in *Bost*, section 20-279.21(b)(4) now provides that individuals injured in car accidents may execute contractual covenants not to enforce judgment in favor of tortfeasors as consideration for payment of the liability policy limits and that the execution of such a covenant does not preclude the injured party from seeking any available UIM benefits. *Id.*

While our decisions in *Spivey* and *Bost* and the 1997 amendment to N.C.G.S. § 20-279.21(b)(4) are instructive, they are not dispositive of the issues presented by the case *sub judice*. The Edwards Release cannot be characterized squarely as a covenant not to enforce judgment, presented in *Bost* and now covered by N.C.G.S. § 20-279.21(b)(4). Likewise, it is obviously not a general release, as was the one in *Spivey*. The boilerplate language that would render the Release general—"and all other persons, firms or corporations liable or who might be claimed to be liable"—was marked-out by hand, such that the discharge was exclusive and limited to the Haggenmakers. This alteration was reinforced further by the handwritten addition precluding not simply all claims, but those claims "against the above named individuals."

Given that UIM coverage is the derivative of a tortfeasor's liability, it could be argued that the logical extension of the *Spivey* Court's decision is to bar recovery of UIM benefits where a release simply states that the named tortfeasor is released from all liability. Such a release, however, is simply not the subject of the present action. Rather, the Release, like the limited release in *Bost*, embodies defendants' attention to and awareness of their right to seek UIM benefits from their insurer and their intent to exclude the liability of the UIM carrier from the Release. Furthermore, unlike the situation presented by *Spivey*, there is no inconsistency between the alleged intent of the injured party and the language of the policy. Here, given the substantial, critical hand-written alterations contained in the Release, defendants' intent to limit release of liability to that of the tortfeasor is clear from the plain language of the Release.

We disagree with plaintiff's assertion that the 1997 amendment to N.C.G.S. § 20-279.21(b)(4) applies to the Release. The statute does not address the situation presented by the case *sub judice*. Rather, it applies only to those circumstances in which an injured party executes a covenant not to enforce judgment. Moreover, the Court does not find, by negative implication, that given the statute's reference

**N.C. FARM BUREAU MUT. INS. CO. v. EDWARDS**

[154 N.C. App. 616 (2002)]

only to covenants not to enforce judgments and not limited releases, the statute requires a settlement *must* contain a covenant to preserve the injured party's UIM claims. If anything, the 1997 amendment only strengthens the legislature's resolve to preserve the remedial purpose of the UIM statute—to "provid[e] coverage to motorists injured by underinsured motorists"—by allowing the injured party to take the necessary steps, including but not limited to executing a covenant not to enforce, to limit a release to the tortfeasor's personal liability. *Gurganious v. Integon Gen. Ins. Corp.*, 108 N.C. App. 163, 168, 423 S.E.2d 317, 320 (1992); *see also Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 296, 378 S.E.2d 21, 26 (1989) (noting that the MVSFRA "is remedial in nature and is to be liberally construed to effectuate its purpose").

Accordingly, we conclude that defendants' claims against their UIM carrier, Farm Bureau, are not barred by the execution of their limited release, even though it contained neither a covenant not to enforce nor an express provision reserving their rights as against Farm Bureau. We do not find our holding here to be contrary to our holding in *Spivey*, where we stated that the plaintiff's lack of intent to release the UIM carrier was irrelevant. Unlike in *Spivey*, defendants clearly intended the Release to be limited to the Haggenmakers, given the alterations therein. As such, Farm Bureau's first assignment of error is overruled.

## II.

[2] Plaintiff next argues that the trial court erred in denying plaintiff's motion to stay arbitration because defendants' claim for UIM benefits was barred by the Release. Based on our holding in the preceding assignment of error, this assignment of error is also overruled.

### Conclusion

For the reasons stated above, we affirm the trial court's order granting summary judgment in favor of defendants and denying Farm Bureau's motion to stay arbitration.

AFFIRMED.

Judges WALKER and McCULLOUGH concur.