RADFORD GURGANIOUS AND WIFE, SHIRLEY GURGANIOUS, PLAINTIFFS v. INTEGON GENERAL INSURANCE CORPORATION, DEFENDANT

No. 915SC1060

(Filed 1 December 1992)

**Insurance § 535 (NCI4th)— UIM coverage—effect of insureds' settlement with tortfeasor**

Where defendant underinsured motorist (UIM) carrier was notified of plaintiffs' action against the tortfeasor, that the

GURGANIOUS v. INTEGON GENERAL INS. CORP.

[108 N.C. App. 163 (1992)]

tortfeasor's liability insurer had tendered its policy limit of $25,000 in settlement of plaintiffs' claim, and that plaintiffs would seek UIM coverage from defendant, and where defendant failed to advance to plaintiffs the amount of the tortfeasor's policy limit or to defend the suit, defendant UIM carrier had no right to object to plaintiffs' settlement of their claim against the tortfeasor, and plaintiffs' dismissal with prejudice of their claim against the tortfeasor was not *res judicata* in plaintiffs' action against defendant carrier to recover the UIM coverage. N.C.G.S. § 20-279.21(b)(4) (1985).

**Am Jur 2d, Automobile Insurance §§ 330-333.**

**Validity, construction, and effect of "no-consent-to-settlement" exclusion clauses in automobile insurance policy. 18 ALR4th 249.**

Appeal by defendant from judgment entered 11 September 1991 by Judge Paul M. Wright in New Hanover County Superior Court. Heard in the Court of Appeals 19 October 1992.

On 12 August 1986, plaintiff Shirley Gurganious was a passenger in an automobile operated by Debra Williams. The automobile operated by Ms. Williams was insured under a policy of insurance issued by defendant, Integon General Insurance Corporation (Integon). The policy included guests as persons insured and provided protection from underinsured motorists.

Mrs. Gurganious and Ms. Williams were traveling on Highway 421 in Erwin, North Carolina when an automobile operated by Tammy Parker Allen failed to yield the right of way at an intersection and collided with the automobile in which defendant was a passenger. Ms. Allen was charged with and pled guilty to failing to yield the right of way.

Following the accident, plaintiffs filed a civil action against Ms. Allen in the New Hanover District Court. Ms. Allen's automobile was insured by United States Liability Insurance Company (United). The total limit of liability under that policy was $25,000.00. United later offered the full amount of its policy in settlement.

By letter dated 13 January 1989, plaintiffs' attorney notified defendant of the institution of the civil action. The letter also informed defendant that United had tendered $25,000.00 in full set-

GURGANIOUS v. INTEGON GENERAL INS. CORP.

[108 N.C. App. 163 (1992)]

tlement of plaintiffs' claim against Ms. Parker and that plaintiffs would be seeking underinsured coverage from defendant.

Defendant chose not to preserve its subrogation rights by tendering to plaintiffs the amount of United's policy limit; nor did defendant choose to defend the action. Subsequently, plaintiffs accepted United's settlement offer and dismissed with prejudice the action against Ms. Allen pursuant to the settlement agreement.

Plaintiffs next filed a claim against defendant for underinsured coverage. Defendant filed a Motion for Summary Judgment on the ground that the action was *res judicata* since plaintiffs previously dismissed with prejudice their claim against the primary tortfeasor. Defendant's motion was denied, but the judge granted the plaintiffs' Motion for Summary Judgment on the issue of *res judicata*. The issues of the primary tort-feasor's negligence and the amount of damages were preserved for trial. The trial court found that the primary tort-feasor was negligent and that defendant was liable to plaintiffs in the amount $175,000.00. Judgment was entered accordingly. From this judgment defendant appeals.

*Shipman & Lea, by Gary K. Shipman, for plaintiff-appellees.*

*Johnson & Lambeth, by Maynard M. Brown, for defendant-appellant.*

ARNOLD, Judge.

Defendant argues that since a UIM insurance carrier's liability is derivative of the primary tort-feasor's liability, and the action against the primary tort-feasor was dismissed with prejudice, the present action is barred by *res judicata*. However, our Supreme Court has held that a final judgment between the primary tort-feasor and plaintiff does not necessarily bar a subsequent claim against the UIM carrier. *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 378 S.E.2d 21 (1989).

As defendant properly points out, the *Silvers* decision was based upon the 1983 version of N.C. Gen. Stat. § 20-279.21(b)(4) while this case is governed by the 1985 version. However, for the reasons contained herein, the 1985 amendments to the statute do not affect the application of the *Silvers* decision to this particular case.

In *Silvers*, the Court stated that its decision was based only on the 1983 version of N.C. Gen. Stat. § 20-279.21(b)(4), and that the statute was amended in 1985 to provide for different procedures in claims for underinsurance benefits. *Silvers*, 324 N.C. at 293 n.3, 378 S.E.2d at 24 n.3. Since defendant in this case chose not to take advantage of those new procedures, it is placed in the same setting as the *Silvers* case.

The amendment referred to in *Silvers* added extensive procedures to N.C. Gen. Stat. § 20-279.21(b)(4) through which a UIM carrier may protect itself. Pursuant to that subsection, a plaintiff is now required to notify the UIM insurance carrier when a claim is filed against the primary tort-feasor, and also when a settlement offer has been made. Plaintiffs in this case properly notified defendant of the claim as well as the settlement offer.

In accordance with the statute, when the primary liability insurance carrier offered the limits of its policy in settlement, defendant could have paid that amount to plaintiffs, thereby preserving its subrogation rights. However, defendant chose not to follow that course. The statute provides in such a case that:

> No insurer shall exercise any right of subrogation or any right to approve settlement with the original owner, operator, or maintainer of the underinsured highway vehicle under a policy providing coverage against an underinsured motorist where the insurer has been provided with written notice in advance of a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of such notice.

1985 N.C. Sess. Laws ch. 666, § 74. Defendant did not forward the money to plaintiffs and therefore had no right to approve or disapprove the settlement.

The statute also provides a method whereby defendant could have defended the suit against the primary tort-feasor, thereby protecting its rights in the first action. The statute provides:

> Upon receipt of such notice, the underinsured motorist insurer shall have the right to appear in defense of such claim without being named as a party therein, and . . . participate in such suit as fully as if it were a party.

GURGANIOUS v. INTEGON GENERAL INS. CORP.

. [108 N.C. App. 163 (1992)]

1985 N.C. Sess. Laws ch. 666, § 74. Defendant chose not to pursue this course either.

Since defendant did not take advantage of the procedures added in 1985, the plaintiffs were put in a position similar to the plaintiff in *Silvers*. In *Silvers*, the Court dealt with conflicting provisions contained within the statute and the policy. Specifically, the Court reasoned that while a release of the tort-feasor acts to release the UIM insurance carrier of its derivative liability, the statute regarding UIM coverage appears "to require the insured to exhaust all liability policies by judgment or settlement before the insurer is obligated to pay under the UIM coverage." *Silvers*, 324 N.C. at 294-95, 378 S.E.2d at 25. The statutory language in question read:

> The insurer shall not be obligated to make any payment . . . to which underinsured motorist insurance coverage applies . . . until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements . . . .

*Silvers*, 324 N.C. at 294, 378 S.E.2d at 25 (citing, 1983 N.C. Sess. Laws ch. 777, § 1). The Court determined that since the statute is remedial and is to be liberally construed to provide coverage, "it was not the intent of the General Assembly that plaintiff be prohibited from recovering UIM benefits. . . ." *Id.* at 296, 378 S.E.2d at 26.

Likewise, the 1985 version of N.C. Gen. Stat. § 20-279.21(b)(4) appears to require exhaustion of all liability policies by judgment or settlement before the UIM carrier must pay. The pertinent part of the 1985 amendment reads:

> Underinsured motorist coverage shall be deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted . . . .

1985 N.C. Sess. Laws ch. 666, § 74. Although the wording is different, the effect is the same. The plaintiffs could have read the exhaustion clause to require them to approach the UIM carrier with judgment or settlement in hand when seeking to recover under the UIM provisions of the policy, *Silvers*, 324 N.C. at

295, 378 S.E.2d at 25, particularly since defendant chose not to involve itself in the litigation at any level.

The same type of inconsistency exists in the amended statute as in the 1983 version. The amended portion of the statute referred to in *Silvers* only provides a way for the UIM insurance carrier to be notified of claims and to protect its rights in such claims. Where the UIM carrier chooses not to avail itself of those procedures, as in this case, and leaves the injured plaintiffs to their own devices, it has no right to object to the settlement of the primary claim and cannot complain when the insureds attempt to take the steps they feel necessary to recover from the UIM carrier, especially when defendant was aware before settlement that plaintiffs would be seeking UIM coverage.

Just as in *Silvers*, we look to the purpose of the statute as a guide to the intent of the legislature. The amendments to the statute in 1985 did not change the remedial nature of the Motor Vehicle Safety and Financial Responsibility Act. The Act is still to be construed liberally to effectuate its purpose of providing coverage to motorists injured by underinsured motorists. In light of the Act's remedial purpose, we hold that plaintiffs are not barred from recovering UIM benefits from defendant because of the dismissal with prejudice of the underlying claim against the primary tort-feasor.

Affirmed.

Chief Judge HEDRICK and Judge WELLS concur.