**DAUGHTRY v. CASTLEBERRY**

[123 N.C. App. 671 (1996)]

TRAVIS F. DAUGHTRY AND GAYLE DAUGHTRY BIZZELL, CO-EXECUTORS OF THE ESTATE OF RUTH ROBERTS DAUGHTRY, PLAINTIFFS v. ROBIN GENE CASTLEBERRY AND GENE CASTLEBERRY, DEFENDANTS

No. COA95-372

(Filed 3 September 1996)

**Insurance § 535 (NCI4th)— UIM carrier—subrogation rights waived—failure to advance settlement offer on timely basis**

A UIM carrier waived its subrogation rights under N.C.G.S. § 20-279.21(b)(4) by failing to advance the $100,000 tendered by the tortfeasors' liability carrier, Nationwide, within 30 days of the UIM carrier's receipt of a letter from Nationwide advising that it was tendering its policy limits, and there was no merit to plaintiff's contentions that written notice of the settlement must come from the insured, not the liability carrier, or that the 30 day time limit for preserving subrogation rights does not begin to run until the UIM insured reaches a final settlement with the underinsured motorist.

**Am Jur 2d, Automobile Insurance § 445.**

**Subrogation rights of insurer under medical payments provision of automobile insurance policy. 19 ALR3d 1054.**

**When does statute of limitations begin to run upon an action by subrogated insurer against third-party tortfeasor. 91 ALR3d 844.**

**Right to recover under uninsured or underinsured motorist insurance for injuries attributable to joint tortfeasors, one of whom is insured. 24 ALR4th 63.**

Judge GREENE dissenting.

Appeal by plaintiffs from order filed 5 January 1995 by Judge Coy E. Brewer, Jr. in Sampson County Superior Court. Heard in the Court of Appeals 24 January 1996.

This is an action to determine insurance subrogation rights. Ruth Roberts Daughtry died from injuries she received in an automobile collision after her car was struck by a vehicle operated by defendant Robin Gene Castleberry and owned by defendant Gene Castleberry. Nationwide Mutual Insurance Company (Nationwide) provided liability coverage in the amount of $100,000 per person/$300,000 per acci-

dent for the Castleberry vehicle and United Services Automobile Association (USAA) provided underinsured motorist coverage (UIM) to Ms. Daughtry. Plaintiffs, as co-executors of the estate of Ms. Daughtry, filed claims seeking damages from the Castleberrys and UIM coverage from USAA. Bob Harrelson, a case management analyst for Nationwide, handled the claim against the Castleberrys on behalf of Nationwide and Holly Brown, an adjuster for USAA, handled the UIM claim against USAA.

On 8 April 1992, Harrelson sent a letter to plaintiffs offering to pay the $100,000 Nationwide policy limit in settlement of plaintiffs' claim. The letter indicated the plaintiffs could accept the $100,000 outright or could select one of two different structured settlement options. The letter also stated the offer was based upon the condition that Nationwide receive a proper release. On 14 May 1992, Harrelson forwarded a copy of the April 8th letter to Ms. Brown at USAA. Brown sent a letter to plaintiffs dated 29 May 1992 which stated: "It appears [Nationwide] has accepted full responsibility for this accident and have [sic] offered to tender their liability limits in the amount of $100,000 to conclude this matter." The letter then offered to settle the UIM claim for an additional $45,000 over and above the $100,000 tendered by Nationwide.

On 29 July 1992, Brown sent a letter to the attorney for Ms. Daughtry's estate. The letter included USAA's check for $100,000 as "an advance of Underinsured Motorist Coverage, to protect our Subrogation rights under the statue [sic]." USAA later settled plaintiffs' wrongful death claim for a total of $200,000—the $100,000 initially advanced on 29 July and an additional $100,000 of UIM coverage under the USAA policy. Plaintiffs executed a release on 24 August 1993 which acknowledged receipt of the $200,000 as "full and final settlement of any and all claims for damages" under the USAA policy and which stated the plaintiffs would cooperate with USAA in USAA's pursuit of any subrogation claim.

Plaintiffs filed this action 26 January 1994 on behalf of USAA seeking recovery from the Castleberrys of the additional $100,000 above Nationwide's liability limits USAA paid to settle plaintiffs' claims. In their answer, defendants moved to dismiss the complaint for failure to join a necessary party and also claimed that USAA had waived any subrogation rights. The answer also denied any negligence on the part of defendants and asserted the defense of contributory negligence.

DAUGHTRY v. CASTLEBERRY

[123 N.C. App. 671 (1996)]

Defendants filed a motion to determine subrogation rights, which the trial court heard 12 December 1994. In an order filed 5 January 1995, the trial court ruled that USAA had waived all subrogation rights against defendants. From this order, plaintiffs appeal.

*Wallace, Morris, Barwick & Rochelle, P.A., by Elizabeth A. Heath and Thomas H. Morris, for plaintiff-appellants.*

*Bailey & Dixon, L.L.P., by David S. Coats, for defendant-appellees.*

McGEE, Judge.

The trial court ruled USAA waived its subrogation rights under N.C. Gen. Stat. § 20-279.21(b)(4) by failing to advance the $100,000 tendered by Nationwide within 30 days of USAA's receipt of the 14 May 1992 letter from Bob Harrelson advising that Nationwide was tendering its policy limits. Plaintiffs argue USAA was not required to advance the $100,000 within 30 days of receipt of the written notice because: 1) written notice of the settlement must come from the *insured*, not the liability carrier; and 2) the 30 day time limit does not begin to run until the UIM insured reaches a final settlement with the underinsured motorist. We disagree and affirm the order of the trial court.

Plaintiffs first contend written notice of the settlement offer must be made by the UIM insured to the UIM carrier. The statute governing subrogation rights of UIM carriers requires, in part, that:

No insurer shall exercise any right of subrogation or any right to approve settlement with the original owner, operator, or maintainer of the underinsured highway vehicle under a policy providing coverage against an underinsured motorist *where the insurer has been provided with written notice* before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice.

G.S. 20-279.21(b)(4) (emphasis added). Although the better practice would be for the insured to notify the UIM carrier when the insured has received an acceptable offer from the liability carrier, there is nothing in the statute which requires written notice to the UIM insurer be made directly by the insured. The statute simply requires

that written notice be given to the UIM carrier before the 30 day period in which to preserve subrogation rights begins to run. Plaintiffs argue this allows a liability carrier to "make many offers and copy them to the [UIM] carrier with no idea whatsoever that the injured party might accept any of the offers," and would require the UIM carrier "to advance payment based on all offers of any kind, regardless of whether it was one acceptable to the injured party, its insured." However, we see no problem in cases where, as here, the liability carrier has offered its policy limits in settlement of the injured party's claims.

In this case, USAA received written notice that Nationwide had offered its liability limit to plaintiffs by way of the 14 May 1992 letter sent by Nationwide to USAA. USAA further acknowledged it had notice of Nationwide's settlement offer in the 29 May 1992 letter from USAA to plaintiffs. Therefore, USAA received proper written notice of the settlement offer as required by G. S. 20-279.21(b)(4). This assignment of error is overruled.

Plaintiffs next contend the 30 day period did not begin to run because the 8 April 1992 offer of settlement, forwarded to USAA on 14 May, "was merely a preliminary negotiation or offer" and "not an actual settlement between the plaintiffs and Nationwide." Plaintiffs argue that a UIM carrier "cannot know when payment must be advanced to its insured until it knows when its insured has agreed to or accepted the terms of the offer." Because the 8 April offer contained different structured settlement options and was conditioned upon the plaintiffs signing a release, and USAA had no notice of plaintiffs' acceptance of the offer, plaintiffs contend the 14 May letter from Nationwide did not trigger the 30 day period. We again disagree.

The statute states that "where the insurer has been provided with written notice *before a settlement*" the insurer waives its subrogation rights unless it advances a payment to the insured "in an amount equal to the *tentative settlement*" within 30 days of receipt of the written notice. G.S. 20-279.21(b)(4) (emphasis added). Further, in *Gurganious v. Integon General Ins. Corp.*, 108 N.C. App. 163, 423 S.E.2d 317 (1992), *disc. review denied*, 333 N.C. 538, 429 S.E.2d 558 (1993), this Court held an insurer waived its right to subrogation where the insurer failed to advance the amount of the liability insurer's settlement offer. This Court recognized that G.S. 20-279.21(b)(4) requires that a UIM insurer be notified "when a claim is filed against the primary tort-feasor, and also when a settlement

DAUGHTRY v. CASTLEBERRY

[123 N.C. App. 671 (1996)]

*offer* has been made." *Gurganious*, 108 N.C. App. at 166, 423 S.E.2d at 318 (emphasis added). This Court also found:

> Plaintiffs in this case properly notified defendant of the claim as well as the settlement offer.
>
> In accordance with the statute, *when the primary liability insurance carrier offered the limits of its policy in settlement*, [the UIM carrier] could have paid that amount to plaintiffs, thereby preserving its subrogation rights. However, [the UIM carrier] chose not to follow that course.

*Id.* at 166, 423 S.E.2d at 318-19 (emphasis added). Both the statute and case law require a UIM insurer be notified when a settlement *offer* is made, and when the primary liability insurance carrier has *offered* the limits of its policy in settlement, as was done in this case, the insurer must advance that amount to the insured within 30 days to protect its subrogation rights. Neither the statute nor case law require that the settlement be completed or that the UIM carrier must have notice of its insured's acceptance of the offer. Therefore, this assignment of error is also overruled.

Here, the evidence shows USAA received written notice sometime between 14 May 1992 and 29 May 1992 that Nationwide had offered its $100,000 policy limit in settlement of plaintiffs' claims. However, USAA waited until 29 July 1992 to advance the amount of Nationwide's settlement offer to plaintiffs. Therefore, USAA waived its subrogation rights by not advancing the $100,000 to plaintiffs within 30 days of receipt of written notice of Nationwide's settlement offer. After reviewing the record, we find no merit to plaintiffs' remaining arguments. For the reasons stated, the order of the trial court is affirmed.

Affirmed.

Judge WYNN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I agree with the majority that the written notice required by N.C. Gen. Stat. § 20-279.21(b)(4) does not have to come from the plaintiffs and may properly come from the defendants' liability carrier

(Nationwide). I do not, however, agree that the notice in this case (copy of 8 April 1992 letter from Nationwide to plaintiffs mailed to plaintiffs' UIM carrier (USSA) on 14 May 1992) was sufficient to begin the running of the section 20-279.21(b)(4) thirty-day time limit. This section provides that the UIM carrier, in order to preserve its subrogation rights, has thirty days after receipt of notice of a tentative settlement between its insured and the tortfeasor's liability carrier in which to "advance a payment to the insured in an amount equal to the tentative settlement." N.C.G.S. § 20-279.21(b)(4) (1993). In order for the UIM carrier to make an advance "equal to the tentative settlement" it is necessary that the notice provide the exact terms of the agreement.

In this case, notice was given to USAA by Nationwide on 14 May 1992 that Nationwide had offered to pay its policy limits to the plaintiffs in cash or pay in accordance with either of two different structured settlements. The offer to settle was further "based on the condition that Nationwide . . . receive a proper release." The record does not reveal any written notice to USAA as to which proposal, if any, the plaintiffs agreed to accept. Accordingly, even assuming that one of the three proposals was acceptable to the plaintiffs and that there was no disagreement about the nature of the release required by Nationwide, USAA was not in a position to know what amount to advance to the plaintiffs to preserve its subrogation rights. Thus because the notice of 14 May 1992 only informed USAA that Nationwide had made an offer to the plaintiffs and did not reveal that a tentative settlement had been reached, it was not sufficient to begin the running of the section 20-279.21(b)(4) thirty-day time period. I therefore would hold that USAA is not barred from seeking subrogation against the tortfeasors and would reverse the order of the trial court.

This Court's previous holding in *Gurganious v. Integon General Ins. Corp.*, 108 N.C. App. 163, 423 S.E.2d 317 (1992), *disc. rev. denied*, 333 N.C. 538, 429 S.E.2d 558 (1993) does not require a different result. In that case the notice to the UIM carrier, which was given by the plaintiffs, indicates that the plaintiffs were agreeable to accepting a cash settlement offer from the liability carrier. *Id.* at 164-65, 423 S.E.2d at 318. Thus the UIM carrier had clear notice that there was an agreement between the liability carrier and plaintiffs and the precise terms of that agreement.