LIBERTY MUTUAL INSURANCE CO., PLAINTIFF v. JUDY BASS PENNINGTON AND RICK PENNINGTON, DEFENDANTS

No. COA99-1335

(Filed 29 December 2000)

### 1. Insurance— automobile—UIM—notification—statute of limitations

The statute of limitations for tort claims generally does not impact the notification provisions of N.C.G.S. § 20-279.21(b)(4), which deals with underinsured motorist claims. The statute does not require that an underinsured motorist carrier be notified of a

claim within the statute of limitations governing the tortfeasor. However, an underinsured motorist carrier's liability is derivative of the tortfeasor's liability and it follows that an insured may not recover from her underinsured motorist carrier when the statute of limitations bars her from recovering from the tortfeasor.

**2. Insurance— automobile—UIM—notification—not prompt— good faith—prejudice**

The trial court erred by granting summary judgment for plaintiff-insurance company in a declaratory judgment action to determine whether defendants were entitled to underinsured motorist coverage. Although plaintiff contended that defendants failed to comply with the notification provision of the policy, and defendants acknowledge that their notification was not given as soon as practicable, an insurer may not automatically deny coverage when an insured fails to follow a policy's notification provisions, but must follow a three step test. In this case, there were issues of fact as to whether defendants acted in good faith and whether plaintiff's ability to investigate and defend was materially prejudiced. As to whether loss of subrogation rights constitutes prejudice, plaintiff opted not to advance funds after the notice; having failed to preserve its right of subrogation, it cannot now complain of defendants' efforts to seek UIM coverage.

Appeal by defendants from judgment entered 24 August 1999 by Judge Robert L. Farmer in Superior Court, Wake County. Heard in the Court of Appeals 14 September 2000.

*Cranfill, Sumner & Hartzog, L.L.P., by Edward C. LeCarpentier III, for plaintiff-appellee.*

*Thompson, Smyth & Cioffi, L.L.P., by Theodore B. Smyth, and Pipkin, Knott, Clark and Berger, L.L.P., by Joe T. Knott, III, for defendants-appellants.*

WYNN, Judge.

On 9 December 1993, Judy Pennington and her daughter Christy were involved in a vehicular accident with Clee Earp, who was driving a truck owned by his employer Blackburn Logging, Inc. The next day, Pennington informed her insurance carrier, Liberty Mutual Insurance Co., of the accident. Liberty Mutual obtained the police report of the accident then interviewed witnesses to the accident. In

January 1994, Liberty Mutual paid $500.00 of the Penningtons' medical expenses.

On 5 June 1996, the Penningtons brought a negligence action against Mr. Earp and Blackburn Logging in the case *Pennington v. Earp. et al.*, 96 CVS 5586 ("the underlying tort action"). Blackburn Logging's insurance carrier, Atlantic Casualty, provided a defense in the action. The matter came on for mediation on 10 December 1997, at which point the Penningtons learned for the first time that Blackburn Logging had $25,000/$50,000 liability limits.

Having determined that Blackburn Logging's policy would not fully cover their damages, the Penningtons notified Liberty Mutual of their intent to claim benefits under their $50,000/$100,000 underinsured motorist policy with Liberty Mutual. In response, one of Liberty Mutual's claims adjusters commented in his notes, "I find it unusual that a logging company only has a 25K policy limit." Liberty Mutual opted not to advance funds to the Penningtons and filed a notice of appearance in the underlying tort action. However, the Penningtons resolved that action by entering into a settlement agreement with Atlantic Casualty in which they reserved the right to pursue an underinsured motorist claim against Liberty Mutual.

Thereafter, Liberty Mutual brought this declaratory judgment action to determine whether the Penningtons were entitled to underinsured motorist coverage. Liberty Mutual contended that the Penningtons failed to comply with the notification provision of their insurance policy and that they failed to notify Liberty Mutual of their claim prior to the expiration of the three year statute of limitations period provided by N.C. Gen. Stat. § 1-15(a) (1983) and N.C. Gen. Stat. § 1-52(1), 1-52(2) or 1-52(16) (1983). The trial court granted Liberty Mutual's motion for summary judgment and the Penningtons appealed to this Court.

The issue on appeal is whether the trial court properly granted summary judgment for Liberty Mutual based on the running of the statute of limitations or the failure of the Penningtons to give timely notice of their claim for underinsured motorist benefits. We reverse the decision of the trial court.

---

[1] We address first the question of whether the statute of limitations controlling the underlying tort action governs the time within which an insured must notify her underinsured motorist carrier of a potential claim.

Underinsured motorist coverage is governed by the Financial Responsibility Act, N.C. Gen. Stat. § 20-279.1, et seq. (1993). The purpose of the Act is to protect innocent victims of financially irresponsible motorists. *See Sutton v. Aetna Casualty & Surety* Co, 325 N.C. 259, 265, 382 S.E.2d 759, 763, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). The Act is to be liberally construed, and if a motorist's policy conflicts with the Act, the Act prevails. *See id.*; *Wilmoth v. State Farm Mut. Auto Ins. Co.*, 127 N.C. App. 260, 262, 488 S.E.2d 628, 630, *review denied*, 347 N.C. 410, 494 S.E.2d 601 (1997).

Under N.C. Gen. Stat. § 20-279.21(b)(4) (1993),

A party injured by the operation of an underinsured highway vehicle who institutes a suit for the recovery of moneys for those injuries and in such an amount that, if recovered, would support a claim under underinsured motorist coverage shall give notice of the initiation of the suit to the underinsured motorist insurer as well as to the insurer providing primary liability coverage upon the underinsured highway vehicle. Upon receipt of notice, the underinsured motorist insurer shall have the right to appear in defense of the claim without being named as a party therein, and without being named as a party may participate in the suit as fully as if it were a party. The underinsured motorist insurer may elect, but may not be compelled, to appear in the action in its own name and present therein a claim against other parties . . . .

This provision does not require that an underinsured motorist carrier be served with pleadings as a party, nor does it require that such carrier appear in the action. Indeed, the subsection allows the underinsured motorist carrier to proceed in an action *as if* it were a party, without being named as such. Further, this provision does not provide a specific time within which an insured must notify her insurer, nor does it dictate how the insured must notify her carrier about the claim. We discern no hint from the statute that an underinsured motorist carrier must be notified within the statute of limitations governing the tortfeasor.

We compare this provision to N.C. Gen. Stat. § 20-279.21(b)(3) (1993), which governs notification to an *uninsured* motorist carrier. That subsection, unlike the underinsured motorist subsection, envisions *serving* the uninsured motorist carrier with a copy of the summons and complaint, and requires that the uninsured motorist carrier be a party to the action. Because these requirements are strikingly absent from subsection (b)(4), which governs underinsured motorist

claims, our General Assembly must have intended for the notification provisions of the two statutes to be construed differently. It follows that subsection (b)(4) does not require that an underinsured motorist carrier be notified of a claim within the statute of limitations governing the tortfeasor.

Nonetheless, it should be noted that an insured would, for instance, be barred from seeking coverage if she failed to bring an action against a tortfeasor within the statute of limitations governing tort actions. An underinsured motorist carrier's liability is derivative of the tortfeasor's liability. *See, e.g., Buchanan v. Buchanan,* 83 N.C. App. 428, 429, 350 S.E.2d 175, 176 (1986), *review denied,* 319 N.C. 224, 353 S.E.2d 406 (1987). It follows that an insured may not recover from her underinsured motorist carrier when the statute of limitations bars her from recovering from the tortfeasor.

In sum, while the statute of limitations would serve to bar underinsured motorist coverage when the insured fails to bring a timely claim against a tortfeasor, the statute of limitations for tort claims generally does not impact the notification provisions of N.C. Gen. Stat. § 20-279.21(b)(4).

**[2]** Next, we examine whether the Penningtons' claim is otherwise barred by their failure to notify Liberty Mutual in a timely manner. The Penningtons' policy contains no specific time within which they had to notify Liberty Mutual about an underinsured motorist claim. Instead, Liberty Mutual's policy provides that the Penningtons must:

> Promptly send us copies of the legal papers if a suit is brought. A suit may not be brought by an insured until 60 days after that person notifies us of their belief that the prospective defendant is an uninsured motorist.

The Penningtons do not dispute that they did not notify Liberty Mutual of the suit against Mr. Earp and Blackburn Logging until about 16 months after bringing suit, and they acknowledge that this was not prompt notification. However, they correctly argue that an insurer may not automatically deny coverage when an insured fails to follow a policy's notification provisions; rather, the insurer must show that it meets the three-step test adopted by our Supreme Court in *Great American Ins. Co. v. C. G. Tate Constr. Co.,* 303 N.C. 387, 279 S.E.2d 769 (1981), *appeal after remand,* 315 N.C. 714, 340 S.E.2d 743 (1986) (hereafter "*Tate*").

That three-part test provides:

> When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

*Tate*, 303 N.C. at 399, 279 S.E.2d at 776; *see also, Nationwide Mut. Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 122 N.C. App. 449, 470 S.E.2d 556 (1996).

As to the first part of the *Tate* test, the Penningtons concede in their brief that they did not notify Liberty Mutual as soon as practicable. In light of that concession, the second question under *Tate* is whether the insured acted in "good faith."

The determination of whether an insured acted in good faith in failing to notify the insured "as soon as practicable" is generally a question for the jury. *See Tate*. In this case, Liberty Mutual offers a number of facts to support its contention that the Penningtons did not act in good faith, such as the fact that the Penningtons did not pursue discovery. However, the Penningtons counter by pointing out other facts indicating that they did act in good faith. In light of this conflicting evidence, it is imprudent for this question to be decided as a matter of law; rather, a jury must weigh this evidence and render a decision. *See id.*

In the absence of being able to show as a matter of law that the insured acted in bad faith, under the third prong of the *Tate* test, the burden shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay. Again, the record shows conflicting views by the parties on this issue which leads us to conclude that this question is a matter for the jury to decide. *See id.*

Nonetheless, Liberty Mutual asserts in its brief that,

> [U]nlike the *Tate* case and other similar *liability insurance* "failure to notify" cases, the instant case involves *more than* the UIM carrier's ability to investigate and defend claims. Due to the very nature of a UIM claim under the North Carolina UIM statute,

LIBERTY MUT. INS. CO. v. PENNINGTON

[141 N.C. App. 495 (2000)]

Liberty Mutual has been irretrievably stripped of its subrogation rights against the underinsured motorist and his employer.

Yet, Liberty Mutual cites no authority to support this argument. Indeed, in *Wilmoth v. State Farm, supra,* this Court held that an insurance carrier may not use its own failure to preserve its subrogation rights to act as a bar to coverage of an underinsured motorist claim. *See also Sutton, supra; Gurganious v. Integon General Ins. Corp.,* 108 N.C. App. 163, 165, 423 S.E.2d 317, 319 (1992), *review denied,* 333 N.C. 538, 429 S.E.2d 558 (1993). Further in *Wilmoth,* we concluded:

> Were an UIM carrier permitted to waive its subrogation rights against a tortfeasor while its insured remained barred, by virtue of settlement with the tortfeasor without legal action, from proceeding in a direct action against the carrier on grounds the insured "was not legally entitled to recover," the UIM carrier would be in a position to thwart its insured's legitimate efforts to seek coverage contractually agreed upon.

*Wilmoth,* 127 N.C. App. at 264, 488 S.E.2d at 631-32.

While this Court has not addressed the question of whether a voluntary waiver of subrogation rights might bar recovery under the *Tate* test, the rationale of *Wilmoth* leads us to conclude that the answer is "no." Since Liberty Mutual made the choice of whether to waive its rights, it cannot now use that waiver to argue that it was prejudiced.

Moreover, this is not a case where the Penningtons entered into a general release against the tortfeasor, thereby relieving Liberty Mutual of any underinsured motorist liability. *See Spivey v. Lowery,* 116 N.C. App. 124, 446 S.E.2d 835, *review denied,* 338 N.C. 312, 452 S.E.2d 312 (1994). Instead, like the insurance carrier in *Wilmoth,* Liberty Mutual "failed to preserve its right of subrogation" and "cannot now 'complain' of plaintiffs' efforts to seek UIM coverage." *Wilmoth,* 127 N.C. App. at 264, 488 S.E.2d at 631. Significantly, if we held that an insurer's failure to exercise its subrogation rights constitutes a bar to coverage, an insurer could successfully avoid providing coverage by first claiming that the insured was not covered, then waiving its subrogation rights. That result would be at odds with the liberal construction policy behind the Financial Responsibility Act to compensate the innocent victims of financially irresponsible motorists. *See Sutton, supra.*

In sum, summary judgment is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. N.C.R. Civ. P. 56(c). Since there are questions of fact that need to be resolved, the trial court erred when it granted summary judgment for Liberty Mutual. The finder of fact must consider this matter in accordance with this decision and the *Tate* test. *See also Nationwide Mut., supra.*

Reversed and remanded.

Judges McGEE and TIMMONS-GOODSON concur.