IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-534

Filed 16 January 2024

Chatham County, No. 18 CVS 269

PAUL ENNIS, as Guardian ad Litem of T.F.G., II, a Minor, Plaintiff,

v.

ALEXANDER HASWELL, RONALD HASWELL, JR., and BETTY HASWELL,
Defendants,

v.

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.,
Intervenor.

Appeal by intervenor from order entered 12 December 2022 by Judge James

M. Webb in Chatham County Superior Court. Heard in the Court of Appeals 31

October 2023.

>    *White & Stradley, PLLC, by J. David Stradley, and Brian D. Westrom for*
>    *plaintiff-appellee.*
>
>    *No brief filed for defendants-appellees.*
>
>    *Young, Moore, and Henderson, P.A., by Walter E. Brock, Jr., and Matthew C.*
>    *Burke, for intervenor-appellant.*

ZACHARY, Judge.

Intervenor North Carolina Farm Bureau Mutual Insurance Company, Inc.,

("Farm Bureau") appeals from the trial court's order denying its motion to enforce its

right of subrogation, in which Farm Bureau sought reimbursement of its $100,000

underinsured motorist ("UIM") coverage payment to Plaintiff from the proceeds of Plaintiff's settlement with Defendants. After careful review, we affirm.

## I.  Background

On 19 February 2016, T.F.G., II, ("T.F.G.") was severely injured while riding as a passenger in a vehicle operated by Defendant Alexander Haswell and owned by Alexander's parents, Defendants Ronald Haswell, Jr., and Betty Haswell. There is no dispute regarding the relevant insurance policies' coverage at the time of the incident. As the trial court found in its order:

> 5. At the time of the Accident, Defendants were insured by an auto liability insurance policy issued by Nationwide General Insurance Company ("Nationwide") with limits of $300,000 per person and $300,000 per accident. This policy also provided [UIM] coverage in the amount of $300,000 per person and $300,000 per accident. The Nationwide policy provided UIM coverage for [T.F.G.], as a passenger in an insured vehicle, in the amount of $300,000 per person and $300,000 per accident.
>
> 6. At the time of the Accident, [T.F.G.] was an insured under a motor vehicle liability insurance policy issued by [Farm Bureau]. The Farm Bureau policy provided UIM coverage for [T.F.G.] with a limit of $100,000 per person.

On 16 March 2018, Plaintiff's counsel[1] sent a letter to Nationwide, demanding that Nationwide tender its policy limit within 30 days. Nationwide did not respond to this demand. Consequently, on 26 April 2018, Plaintiff, acting on T.F.G.'s behalf

---

[1] On 26 April 2018, the trial court granted Plaintiff Paul Ennis's motion to be appointed T.F.G.'s guardian ad litem, as T.F.G. was a minor child without general or testamentary guardian.

as his guardian ad litem, filed suit against Defendants in Chatham County Superior Court. In the complaint, Plaintiff alleged negligence by Defendant Alexander Haswell, and the vicarious liability of Defendants Ronald and Betty Haswell pursuant to the family purpose vehicle doctrine.

On 2 May 2018, Plaintiff's counsel notified Farm Bureau that (1) Nationwide had not responded to the time-limited demand, (2) Plaintiff had filed suit against Defendants, and (3) Farm Bureau had the right to participate in the litigation as an unnamed party.

On 9 May 2018, Plaintiff's counsel stated to defense counsel that Plaintiff "would not accept $300,000 from Nationwide at this point in time in settlement on behalf of . . . Defendants." On 24 May and 8 June 2018, Nationwide served Plaintiff with offers of judgment in the amount of $300,000 on Defendants' behalf. Plaintiff's counsel sent a copy of the 8 June offer of judgment to Farm Bureau on 14 June 2018, but Farm Bureau did not advance the amount of Nationwide's tender. Plaintiff did not accept the offer of judgment, and the litigation continued.

A month later, on 20 July 2018, Farm Bureau offered to pay Plaintiff $100,000 pursuant to its UIM coverage. Plaintiff accepted this offer, and by consent order entered on 28 January 2019, the trial court approved the parties' settlement of the Farm Bureau UIM claim. Farm Bureau "reserv[ed] any and all rights, if any, it may have to recover its payments from the tortfeasor, and acknowledg[ed] that [Defendants] contend that these rights have been waived."

On 23 September 2022, Plaintiff and Defendants participated in court-ordered mediation, which culminated in an agreement to settle for an amount in excess of $300,000. That same day, Plaintiff's counsel notified Farm Bureau via email of the settlement agreement and suggested that Farm Bureau could "choose to advance to secure its subrogation rights." On 12 October 2022, Farm Bureau declined to advance the amount of the settlement agreement.

On 26 October 2022, Farm Bureau filed (1) a motion to intervene in the action and (2) a motion to enforce its subrogation right, pursuant to N.C. Gen. Stat. § 20-279.21(b)(4) (2021). The matter came on for hearing on 31 October 2022.

After entering a sealed order approving the confidential settlement, the trial court heard Farm Bureau's motions. The trial court granted Farm Bureau's motion to intervene without objection from the other parties. On 12 December 2022, the trial court entered an order denying Farm Bureau's motion to enforce its subrogation right. Farm Bureau timely filed notice of appeal.

## II. Discussion

This case involves the interpretation of N.C. Gen. Stat. § 20-279.21(b)(4): in sum, the question presented is whether Farm Bureau was required to advance to Plaintiff the amount of the liability settlement offer in order to preserve its subrogation claim against the proceeds of any recovery from the tortfeasor.

Farm Bureau argues that, because it paid its UIM policy limit before the liability insurer exhausted its policy limits, pursuant to § 20-279.21(b)(4), "Farm

Bureau became subrogated to the extent of that payment and therefore earned the right to reimbursement of its $100,000 payment from any money that Plaintiff recovered from the owner or operator of the underinsured vehicle or their liability insurer." Plaintiff, on the other hand, contends that the plain text of § 20-279.21(b)(4) is clear—if a UIM insurer "wishes to preserve its subrogation rights against the tortfeasor, it must advance a payment to the insured in the amount of the tentative settlement with a liability insurer within 30 days of the date it receives notice of the offer. If it does not, it loses all subrogation rights." For the reasons that follow, we agree with Plaintiff.

## A. Standard of Review

The question presented is purely a matter of law. "Answering this question primarily involves interpretation of the Motor Vehicle Safety and Financial Responsibility Act of 1953 (commonly referred to as the 'FRA'), and examination of the terms of Farm Bureau's motor vehicle insurance policy, each a question of law." *Lunsford v. Mills*, 367 N.C. 618, 622–23, 766 S.E.2d 297, 301 (2014) (citation omitted). "This Court reviews questions of law de novo, meaning that we consider the matter anew and freely substitute our judgment for the judgment of the lower court." *Id.* at 623, 766 S.E.2d at 301.

## B. Analysis

"According to well-established North Carolina law, the intent of the Legislature controls the interpretation of a statute." *C Invs. 2, LLC v. Auger*, 383 N.C.

1, 8, 881 S.E.2d 270, 276 (2022) (citation omitted). "The avowed purpose of the [FRA], of which [N.C. Gen. Stat.] § 20-279.21(b)(4) is a part, is to compensate the innocent victims of financially irresponsible motorists. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (citations omitted), *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989).

One portion of N.C. Gen. Stat. § 20-279.21(b)(4) addresses a UIM insurer's right to subrogation:

> *An underinsured motorist insurer may at its option*, upon a claim pursuant to underinsured motorist coverage, *pay moneys without there having first been an exhaustion of the liability insurance policy* covering the ownership, use, and maintenance of the underinsured highway vehicle. *In the event of payment, the underinsured motorist insurer shall be either*: (a) entitled to receive by assignment from the claimant any right or (b) *subrogated to the claimant's right* regarding any claim the claimant has or had against the owner, operator, or maintainer of the underinsured highway vehicle, provided that the amount of the insurer's right by subrogation or assignment shall not exceed payments made to the claimant by the insurer. *No insurer shall exercise any right of subrogation* or any right to approve settlement with the original owner, operator, or maintainer of the underinsured highway vehicle under a policy providing coverage against an underinsured motorist *where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days* following receipt of that notice.

N.C. Gen. Stat. § 20-279.21(b)(4) (emphases added).

Farm Bureau contends that this section of the statute creates two kinds of subrogation rights, differentiated by whether the UIM insurer pays a claim before the insured exhausts the tortfeasor's liability insurance coverage or after the exhaustion of coverage. According to Farm Bureau, if a UIM insurer elects to make a pre-exhaustion payment, as it did in the instant case, the insurer "become[s] subrogated to the claimant's rights against the tortfeasor, to the extent of [the insurer's] payment." Notably, Farm Bureau only cites the first two sentences of the above-quoted portion of § 20-279.21(b)(4) to support this "type of subrogation"; Farm Bureau's citation ends before the sentence limiting "*any* right of subrogation . . . where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days[.]" *Id.* (emphasis added).

In Farm Bureau's view, the omitted, limiting language of § 20-279.21(b)(4) solely applies to the other "type of subrogation" that Farm Bureau identifies: a post-exhaustion payment. In the event of a post-exhaustion payment, Farm Bureau asserts that the UIM insurer may either appear and defend the action or "advance" the amount of settlement. Thus, according to Farm Bureau, by applying the statutory limits from this "separate portion" of § 20-279.21(b)(4), the trial court erroneously "engrafted an inapplicable requirement on Farm Bureau's subrogation right and effectively ruled that Farm Bureau had no subrogation right whatsoever."

Farm Bureau's argument is unpersuasive for several reasons. To begin, there is no ambiguity in the plain language of § 20-279.21(b)(4). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *C Invs. 2*, 383 N.C. at 8, 881 S.E.2d at 276 (cleaned up). Section 20-279.21(b)(4) plainly states:

> *No insurer* shall exercise *any right of subrogation . . .* where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice.

N.C. Gen. Stat. § 20-279.21(b)(4) (emphases added).

The language used by our General Assembly in this subsection is "clear and unambiguous" and thus, we "are without power to interpolate, or superimpose, provisions and limitations not contained" within its text. *C Invs. 2*, 383 N.C. at 8, 881 S.E.2d at 276 (citation omitted); *see also Haarhuis v. Cheek*, 261 N.C. App. 358, 366, 820 S.E.2d 844, 851 (2018) ("This language is clear and unambiguous, and we are not at liberty to divine a different meaning through other methods of judicial construction." (cleaned up)), *disc. review denied*, 372 N.C. 298, 826 S.E.2d 698 (2019). Consequently, it matters not whether there are "two different types of statutory subrogation rights[,]" as Farm Bureau contemplates. In that Farm Bureau "fail[ed]

to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice[,]" Farm Bureau is not entitled to "exercise *any* right of subrogation"—regardless of whether that right of subrogation arises from a pre-exhaustion payment. N.C. Gen. Stat. § 20-279.21(b)(4) (emphasis added).

Moreover, Farm Bureau misplaces its reliance on *Farm Bureau Insurance Co. of North Carolina v. Blong*, 159 N.C. App. 365, 583 S.E.2d 307, *disc. review denied*, 357 N.C. 578, 589 S.E.2d 125 (2003), and *Tutterow v. Hall*, 283 N.C. App. 314, 872 S.E.2d 171 (2022), *petition for disc. review dismissed and cert. denied*, 384 N.C. 33, 883 S.E.2d 475 (2023).

Farm Bureau cites *Blong* for the proposition that Farm Bureau "was not required to advance [payment] in order to preserve its subrogation right." However, *Blong* stands for no such proposition. After quoting the section of the Farm Bureau UIM policy at issue in *Blong*—with its provision that subrogation rights do not apply "if we have been given written notice in advance of a settlement and fail to advance payment in an amount equal to the tentative settlement within 30 days following receipt of such notice"—this Court noted that "[t]he contingency in the latter provision has not been alleged, therefore no impediment from the policy exists." 159 N.C. App. at 372, 583 S.E.2d at 311. *Blong* is simply inapplicable to the dispositive issue in the present case.

Similarly inapplicable is *Tutterow*, in which we held that "[t]he trial court

- 9 -

properly determined that [N.C. Gen. Stat. § 20-279.21(b)(4)] is inapplicable" in that "the UIM carriers had no duty to advance any payments because they owed nothing under their policies"; the amounts of the liability policies' coverage and the UIM coverage were equal, and therefore, there was no UIM obligation. 283 N.C. App. at 320, 872 S.E.2d at 176.

In light of our conclusion that no distinction exists between pre-exhaustion and post-exhaustion payments under § 20-279.21(b)(4), we need not address Farm Bureau's argument that "there had been no exhaustion of [Defendants'] liability insurance policy" at the time that Farm Bureau paid its $100,000. Farm Bureau's position is based on the premise that Plaintiff "had expressly rejected the tender of policy limits and stated [an] intent to continue to reject settlement offers for the liability insurer's policy limits." This argument has been repeatedly rejected by this Court:

> Both the statute and case law require a UIM insurer be notified when a settlement *offer* is made, and when the primary liability insurance carrier has *offered* the limits of its policy in settlement, as was done in this case, the insurer must advance that amount to the insured within 30 days to protect its subrogation rights. Neither the statute nor case law require that the settlement be completed or that the UIM carrier must have notice of its insured's acceptance of the offer.

*Daughtry v. Castleberry*, 123 N.C. App. 671, 675, 474 S.E.2d 137, 140 (1996), *aff'd*, 346 N.C. 272, 485 S.E.2d 45 (1997). Accordingly, under *Daughtry*, the only requirement to trigger the 30-day deadline is an *offer*, and the insured's response—

whether known or unknown to the UIM insurer—is immaterial.

We acknowledge the public policy concerns advanced by Farm Bureau. However, this Court is "an error-correcting body, not a policy-making or law-making one." *Shearin v. Brown*, 276 N.C. App. 8, 14, 854 S.E.2d 443, 448 (2021) (citation omitted). Our role "is not to speculate about the consequences of the language the legislature chose; we interpret that language according to its plain meaning and if the result is unintended, the legislature will clarify the statute." *Wake Radiology Diagnostic Imaging LLC v. N.C. Dep't of Health & Hum. Servs.*, 279 N.C. App. 673, 681, 866 S.E.2d 489, 495 (2021) (cleaned up). Accordingly, although we decline to address Farm Bureau's policy arguments, the arguments are preserved should Farm Bureau seek further review.

## III.    Conclusion

For the foregoing reasons, the trial court's order is affirmed.

AFFIRMED.

Judges STADING and THOMPSON concur.